## CURLEE v. PHELPS. (No. 1975.)

(Court of Civil Appeals of Texas. Amarillo. May 24, 1922. Rehearing Denied June 21, 1922.)

1. **Brokers 58—Real estate agent held entitled to commission, though contract of sale was unenforceable, because indefinite.**

Where landowner listed his land with a real estate agent to find a purchaser, the agent was entitled to a commission on finding purchasers ready, able, and willing to buy, regardless of the fact that a contract drawn by the landowner was unenforceable under the statute of frauds, because of being indefinite.

2. **Vendor and purchaser 22—Description of land in contract of sale held sufficiently definite; "adjoining."**

A contract of sale which described land as being 25 acres off the south end of a 37½-acre tract, adjoining the east 100 acres on the west, out of a designated block, was sufficiently definite to be enforceable, regardless of the fact that extrinsic evidence would have to be resorted to to fix the boundaries of the land so described; adjoining meaning lying next to, adjoining to, uniting, being in contact.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adjoining.]

3. **Vendor and purchaser 45—Question whether land could be located from contract of sale held for trial court.**

Where a contract of sale of land called for "25 acres off the south end of a 37½-acre

tract, adjoining the east 100 acres on the west, out of block 53," whether the description was sufficient to enable a competent surveyor to find the property without taking into consideration outside matters was a question for the trial judge.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Albert Phelps against W. S. Curlee. From judgment for plaintiff, defendant appeals. Affirmed.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellant.

Fitzgerald & Hatchitt, of Wichita Falls, for appellee.

HUFF, C. J. [1] This action was brought by Phelps against Curlee, for commission due him as a broker in procuring purchasers in the person of H. E. Johnson and J. M. Finch, of a certain oil lease on 25 acres of land. It is alleged that appellant, Curlee, listed with appellee 25 acres of oil land off the south end of a 37½-acre tract of land, to sell for the price of $500 per acre, agreeing to pay appellee all over $500 per acre as a commission for his services; that he found purchasers at the price of $600 per acre; that appellant entered into a written contract with the purchasers at said price, who placed in escrow with the contract the sum of $3,000 as part of the consideration and to to be forfeited in case of a failure to comply with the terms and conditions of the contract. It is further alleged, for some reason unknown to him, appellant entered into a subsequent agreement with the purchasers, abrogating the original contract and giving an option for the consideration of $4,000 on said property, and that the purchasers did not take the lease; that the appellant refused to pay appellee the commission due, although requested so to do. The appellant answered by general denial and specially that the contract entered into between appellant and the purchaser was not a sufficient memorandum of writing to take it out of the statute of frauds, and for said reason that contract was void, and further pleaded that, if the original contract was sufficient, that at the special instance and request and by the inducement of the appellee an optional contract was entered into in lieu of the original binding contract, and for that reason the appellant is not liable. The appellee answered by supplemental petition, not believed necessary to be set out. The case was submitted to the jury upon issues, but only on the issues whether appellee caused appellant, after making the contract of sale with the purchasers, to enter into an option contract with appellant wherein they, by contract, were to give 15 days' extension with an option to take the lease or

not as the purchasers should elect, or whether the appellees knew of such option contract or assented to or agreed thereto, or knowing the facts acquiesced in or consented thereto. The jury answered all the issues in favor of the appellee and each of said issues in the negative. The court rendered judgment upon the findings for appellee in the sum of $2,500.

The evidence sufficiently established that appellant Curlee listed with appellee Phelps the south 25 acres off of the 37½-acre strip adjoining on the west the 100 acres off the east end of block 53, J. A. Kemp subdivision, Wichita Valley lands, and that he also listed the east 50 acres out of the same block. The 25 acres was listed and designated on the map at the time of the listing by Curlee, which was pointed out by him as the land the appellee was authorized to sell. The particular land is designated on the following sketch, which was used in listing and in selling it:

BLOCK 53

The appellant listed the land with appellee at $500 net to Curlee, and any amount above that price appellee was to have as a commission for his services. The appellee procured Finch and Johnson as purchasers, at $600 per acre. In making the deal, the purchasers bought the land with reference to the map or sketch above set out. The appellee took, or caused to be taken, the purchasers to the office of appellant, and introduced them as purchasers who agreed to take the 25 acres at $600 per acre. The purchasers were shown the subdivision of the land as marked on the map by Curlee, and, after they saw its location and found out the rentals, they decided to take it, and Curlee, the appellant, drew up the contract. Curlee showed the purchasers how the block was platted from the map; that he owned the entire block, the 100 acres on the east, and that, out of the 50 acres west of the 100 acres, 12½ acres had been sold, leaving 37½ acres in the west 50-acre tract, which ran the entire length of the block, north and south. One of the purchasers made a rough sketch of the land while testifying, substantially as the above sketch. Curlee wrote the contract and also executed at the same time an assignment and placed it with the contract in escrow, as called for in the contract. The assignment at the trial was shown to have been lost or destroyed, but one of the purchasers stated the description of the land he believ-

ed was about the same as in the contract. The purchasers were ready and willing to take the land at the price and on the terms at which the appellee was authorized to sell. The appellant accepted the purchasers as satisfactory and drew the contract and fixed the terms and gave the description of the land and himself placed it in the contract drawn by him. The appellee had nothing to do with the drawing of the contract, but only took the purchasers to the appellant to make a contract satisfactory to him. The contract stipulates:

"That the first party (Curlee) agrees to sell, transfer and assign unto the said second parties (H. E. Johnson and J. M. Finch) an oil and gas lease out of block 53, J. A. Kemp Wichita Valley lands, and being more particularly described as follows: Twenty-five (25) acres off the south end of a 37½-acre tract, adjoining the east 100 acres on the west, out of block 53."

The recited consideration was $15,000, to be paid upon receipt of abstract of title to the land. A deposit as a forfeit of $3,000 to show good faith pending examination of abstract. The $3,000 to be a part of the purchase-money price and to be returned should title be defective. The abstract was to be furnished within 10 days; 6 days were allowed for examination. The contract and assignment were to be deposited in the bank with the $3,000, with the understanding that the bank turn over to the purchasers the attached assignment upon the payment of the remaining $12,000. After the execution of this contract, the purchasers asked for further time. The appellant granted them 15 days further time and drew up an option contract. The consideration for such extension was $1,000. The contract of sale was changed to an option, leaving it to the election of the purchasers to take the land or not, as they should choose. As found by the jury, the appellee did not cause such change, did not know thereof or assent or acquiesce in the change from a sale to an option. The appellant introduced a surveyor, who testified the description in the contract is very vague and indefinite; without some explanation he could not find the particular piece of land contracted to be conveyed by the description in the contract. The witness stated by varying the dimensions a little the 37½ acres of land adjoining the east 100 acres could be made or put into an indefinite number of positions. This witness also drew or assented to the drawing of several different figures: An oblong or elongated rectangle extending east and west from the west line of the 100 acres, figures resembling trapezium or trapezoid, etc. On cross-examination the witness stated he could take the description as contained in the contract and locate block 53 of J. A. Kemp Wichita Valley land; that he could locate the 100 acres on the east end of the block; that,

if he had the map and the description marked off before him, he could go and find it; that such would be additional information; that it would not be hard to find if he had the map. Examining a map like the sketch above set out he testified that he could locate the 25 acres like that which would be out of block 53. It would be 25 acres off of the south end of the 37½-acre tract which adjoined the east 100 acres of block 53 on the west.

The appellant seeks to reverse this case upon two propositions: (1) That there was no binding contract entered into, as the land was so indefinitely and vaguely described as it could not be identified and that it referred to no data from which a definite description could be obtained. (2) The court erred in refusing to submit an issue to the jury requiring them to find whether the description of the land in the contract was sufficient for a competent surveyor to find the same without taking into consideration outside matters not mentioned in the contract.

We do not believe the right of the broker to recover under the facts of this case depends upon a contract between the owner and purchasers being so drawn that it is enforceable under the statute of frauds. The broker found purchasers ready, able, and willing to take the land at the price and upon the terms acceptable to the owner. The broker did not assume to make a binding enforceable contract; that duty the owner undertook. If the owner had refused to enter into a contract, he could not defeat the broker. If the owner had no title to the 25 acres listed and pointed out to be sold, the broker would nevertheless be entitled to the commission upon securing purchasers therefor. In other words, if the description in the conveyance to the owner was void, thereby rendering it insufficient to enforce specific performance, the broker, notwithstanding, was entitled to his commission. A broker is not to be defeated because the owner will not, does not, or cannot convey to the purchaser. The case of Moss v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847, cited by appellant, does not hold to the contrary. In that case Wren drew the contract as agent for his principal. He was required to show a contract of sale which could be specifically performed. In this case, the broker's right did not depend upon his having effected an enforceable contract. He undertook to find purchasers, which he did. It was left with the owner to procure an enforceable contract. The purchasers were ready and willing to enter into such and, if one was not executed, it was the fault of the owner and not the broker. It was not essential that the sale should be consummated if it was through the fault of the owner that it was not, either on account of his title or upon his failure or refusal to make a contract.

Our Supreme Court has held, in fixing the right of a broker to a commission, that, if the purchaser is willing and able to buy, although he was at liberty not to do so, must be regarded as controlling and as dispensing with the necessity of a binding contract in writing to purchase. Hamburger v. Thomas, 103 Tex. 280, 126 S. W. 561; Vrablec v. Kocurek (Tex. Civ. App.) 199 S. W. 876; Williams v. Atkinson (Tex. Civ. App.) 214 S. W. 504; McFarland v. Lillard, 2 Ind. App. 160, 28 N. E. 229, 50 Am. St. Rep. 234. The McFarland Case, supra, is, as we conceive the question, analogous to this case and states the rule which should control. It is said 'therein:

"We cannot find any material distinction between the two classes [undertaking to sell and undertaking to find a purchaser]. The broker in either case is required to do no more than find a purchaser. He cannot do the selling, unless specially authorized to do so by power of attorney. That must be done by the principal. The undertaking to 'sell' in such case is no more than an engagement to find a purchaser who is ready and willing to buy [citing authorities]. The appellant next insists that, before the appellee could recover, he must show that he had effected a bargain and sale which was mutually binding between the parties, and, as the contract to purchase was not in writing, it was void by the statute of frauds, and could not be enforced, and that consequently the appellee had failed to 'sell,' as contemplated by the contract. In this view we cannot concur. When the appellee had found a purchaser who was ready and willing to buy. upon the terms proposed, he had performed his part of the contract, and the commission was due, although, through the fault of the appellant, the sale was not consummated."

[2] The cases above cited from this state support the above quotation. Since there is no complaint on this appeal that the evidence is insufficient to support the judgment upon the imputed finding of the court, and, as the judgment has support in the evidence, that the broker found purchasers ready and willing to take the land at the authorized price and that they were willing to do so, and that the owner accepted them as such, and, since the evidence will support such finding, the broker will be entitled to his commission, whether the owner procured a valid contract, one enforceable under the statutes. The judgment, we think, was properly entered, whether the description of the land in the contract meets the requirements of the statute or not. This conclusion, if correct, renders the question raised by appellant immaterial. However, it may be proper here to give our views as to whether the contract is void for failure to describe the subject-matter.

The contract evidences the fact that Curlee was the owner of the 37½ acres and the 25 acres out of it. If the description had read "my 25 acres off of a 37½-acre tract in

block," we presume it would not be contended that this did not furnish data sufficient to identify the land under the decisions in this state. The appellant contracted to convey and to show title to the land and to assign it by a written conveyance, but it is said 37½ acres may have been west of 'the east 100 acres in the block in any kind or in many forms and shapes. It is possible to conceive a lot of land in fantastical shapes but, if there is a 37½-acre tract adjoining the east 100 acres on the west, and in that block, referring 'to it as such ought, it would seem, to be such data as would enable a surveyor to locate the tract to be conveyed. The obligation to convey and to show title in the vendor describes it as definitely as being a tract belonging 'to the vendor as if he had said "my tract." In effect, he asserts it is his tract to convey. It has been held in Massachusetts, if a party enters into an agreement, who is in fact 'the owner of a parcel answering the description and only one such, that must be regarded as the one to which the description refers. With the aid of the presumption, the words "a house and lot" on a street, where a party who uses the language only owns one estate, are as definite and precise as the words "my house and lot" would be, a description the sufficiency of which has been placed beyond all doubt by very numerous authorities. Hurley v. Brown, 98 Mass. 545, 96 Am. Dec. 671; Scanlan v. Geddes, 112 Mass. 15; Kitchen v. Herring, 42 N. C. 190; Lente v. Clarke, 22 Fla. 515, 1 South. 149.

Some cases hold simply stating "a tract" is insufficient. This may be true, but it seems to us, if in describing a tract it is further identified as a 37½-acre tract in a certain block, and further locates it by joining it to another tract in the same block and giving the side of 'the tract to which it is joined, would be sufficient data from which it might be identified. It may not give its form or shape, but it does identify a particular tract in a particular block, at a particular locality. "A" may mean "one," or "any." Hence "a tract" not particularized may mean any tract. But when it is pointed out what tract, as a 37½-acre, in a certain block, adjoining a certain other tract, it is particularized and evidently means one particular tract, designated so as to be identified.

The description localizes this particular tract as "adjoining the east 100 acres on the west out of block 53." The word "adjoining" means lying next to, adjoining to, uniting, being in contact. The two tracts being out of the same block and adjoining, indicates they are in contact the length of their respective lines. If such is so, the west line of the 100 acres would be the east line of the 37½ acres. Whether this is true or not, this contract points out 'the locality of the 37½ acres. It does not describe it or fix its form

or shape but, if there is such a tract, the data is given for determining it. The 37½ acres is shown to be a tract of land segregated and existing and pointed to as such.

"The distinction between what is deemed to be a sufficient reference to the subject-matter of the contract and what is regarded as insufficient is that, in the former case, it is accurate, unambiguous, and definitely refers to a particular lot of land, while in the latter case its indefiniteness is such that it affords no evidence in itself that a definite piece of land was intended. If the descriptive language used is clear and explicit in denoting a particular lot of land, it is not essential that it should contain a statement of its boundaries, its geographical location, or other designation frequently used in formal conveyances of real estate. If it has that characteristic, parol evidence is admissible to apply the abbreviated description to the land thus clearly indicated." Gilbert v. Tremblay, 79 N. H. 481, 111 Atl. 314.

"Where the memorandum on its face appears to refer to a definite parcel of land, the description need not be such as to render needless a resort to extrinsic aid to identify the property. It is enough if the description be sufficient, with the assistance of external evidence, to fit and comprehend the property which is the subject of the transaction, to the exclusion of all other property." 20 Cyc. 270; Morrison v. Dailey (Tex. Sup.) 6 S. W. 426; Watson v. Baker, 71 Tex. 739, 9 S. W. 867; Wilson v. Smith, 50 Tex. 365; Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Taffinder v. Merrell, 95 Tex. 95, 65 S. W. 177, 93 Am. St. Rep. 814; Pierson v. Sanger, 93 Tex. 160, 53 S. W. 1012; Beaton v. Fussell (Tex. Civ. App.) 166 S. W. 458; Strohburg v. Walsh (Tex. Civ. App.) 203 S. W. 391; Preble v. Abrahams, 88 Cal. 245, 26 Pac. 99, 22 Am. St. Rep. 301; Holley's Executor v. Curry, 58 W. Va. 70, 51 S. E. 135, 112 Am. St. Rep. 944.

[3] As to the requested issue asking that the jury determine whether the description contained in the contract was sufficient to enable a competent surveyor to find the property without taking into consideration outside matters. This we believe was for the judge to determine; that is, whether the ambiguity was patent, and such as to render the contract void and not for the jury. If the ambiguity was latent, if there was any controversy in the evidence applying the description to the particular lands conveyed, it would then have been a question for the jury. That the description related to a particular lot of land which the parties had in mind, and in reference to which the contract was made, is too clear from this record to require an issue to be submitted to the jury. If the contract is void, it is so because of its terms and not because of any extraneous facts.

We are asked to hold up this case until the case of Long v. Martin is determined by the honorable Supreme Court. The description of the land in that case is not the same as in this. The Supreme Court seems to have some doubt as to the sufficiency of the description in that case. If we had any doubt as to the description in that case when it was before us, we resolved it in favor of the legality of the contract. There is nothing to be gained by holding up this case. If the honorable Supreme Court has doubts in this case, we presume it will grant a writ, unless it shall agree with us upon the matter first discussed.

We believe the judgment should be affirmed.