### HARRISON BLDG. CO. v. B. F. DITTMAR CO. (No. 7976.)

Court of Civil Appeals of Texas. San Antonio. April 4, 1928.

1. Brokers &⇒54—Broker procuring person ready, able, and willing to make loan on terms specified held entitled to commission.

Where broker, employed under written agreement to procure loan for defendant on certain terms and security for specified commission, secured lender ready, able, and willing to make the loan on the terms specified, and promptly notified defendant thereof, contract was complete and binding on defendant and commission was earned, though, because of defendant's act in procuring loan elsewhere, transaction was never consummated.

2. Brokers &⇒40—Application reciting that defendant would pay specified brokerage for procuring loan held unambiguous.

Application for loan through plaintiff broker, reciting that brokerage of 5 per cent. should be payable "2½% cash and 2½% 13 months after date," *held* unambiguous, and merely meant that when broker procured the

loan through any source applicant would pay him the stipulated brokerage.

**3. Contracts ⚖162—Inconsistencies and conflicts in contracts must be construed together to give effect to intention of parties as collected from whole contract and surrounding circumstances.**

Inconsistencies and conflicts in contracts must be construed together so as to give effect to the intention of the parties as collected from the whole contract, and all the surrounding circumstances will be considered for the purpose of ascertaining the real intention of the parties.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Action by B. F. Dittmar Company against the Harrison Building Company. Judgment for plaintiff, and defendant appeals. Affirmed.

R. M. Bounds, of McAllen, for appellant.

Strickland & Ewers and J. Q. Henry, all of Mission, for appellee.

COBBS, J. This suit was brought by appellee against Harrison Building Company for certain commissions and brokerage. The basis of this suit is predicated upon the following contract:

"Date: May 12th, 1927.

"We hereby make application to B. F. Dittmar Co. (Inc.) of San Antonio, Texas, for a loan of $35,000.00 for the term of 7 years, payable in gold coin of the United States of America, with interest at 7 per centum per annum, payable semiannually, and to be secured by a first mortgage (or trust deed) on the property hereinafter described, and to be payable as follows, to wit: 5% semiannually, balance at end of 7th year—and warrant the following statements and answers to questions to be true and correct."

Here follows a great amount of description and details, all of which are unimportant for a construction of the contract, and the contract concludes as follows:

"I have no homestead exemption.

"Who will indorse the note? J. G. Harrison.

"Worth of indorser: $———.

"Will you furnish abstract of guaranty title? Abstract.

"Will you stand expense of drawing up papers, examination of title, etc.? Yes.

"What brokerage will you pay? 5 per cent. or $———.

"Said brokerage payable 2½ per cent. cash and 2½ per cent. 13 months after date.

"Name: Harrison Building Company,
"By J. G. Harrison, Pres.
"Address: McAllen, Texas.
"Accepted May 15, 1927.
"B. F. Dittmar Co.,
"By Elmer A. Dittmar, Pres."

The cause was submitted to the jury on two special issues:

"Question No. 1. Do you find and believe from a preponderance of the evidence in this cause, that after the defendant applied to plaintiff, in its written application, dated May 12, 1927, and introduced in evidence before you, the plaintiff, in good faith, with due diligence and within a reasonable time, procured for said defendant, Harrison Building Company, a loan, or some person who offered and was able and willing to make a loan, to said defendant, in the sum of $35,000, in accordance with the terms set forth in said application in evidence before you? You will answer this question 'yes' or 'no' as you may find and believe from the evidence. Answer: Yes.

"If you have answered the foregoing question in the affirmative, then you will answer the following question, but if you have answered the same in the negative, then you need not answer the following question:

"Question No. 2. Did the plaintiff, after it secured said loan or procure a person who was ready, able, and willing to make said loan, if you find plaintiff did so do, use due diligence in notifying defendant of such fact? You will answer this question 'yes' or 'no' as you may find and believe from the evidence. Answer: Yes."

The testimony showed that the loan was to be made directly to the Harrison Building Company paying out its money on the same and to be thereafter transferred to the Lincoln National Life Insurance Company.

[1] The evidence shows that the money was secured by appellee for appellant from the Lincoln National Life Insurance Company, who approved the said loan agreement, and appellant was promptly notified that the lender was ready, willing, and able to deliver the money as soon as appellant would deliver an abstract of title for examination. The application, though in writing, was not a contract alone relied on, but when this application was approved by Lincoln National Life Insurance Company and Harrison Building Company was notified of such approval and acceptance, then the contract was complete and B. F. Dittmar Company had performed all the services for Harrison Building Company, as agreed upon; that is, it had brought together and procured some one ready, willing, and able to make the loan on the terms and conditions set out in the application of Harrison Building Company.

[2] The contract seems clear enough that the application was made to B. F. Dittmar Company and no one else to secure the loan, with a stipulation for the payment of "2½ per cent. cash and 2½ per cent. 13 months after date." This is not ambiguous; it simply means to tell B. F. Dittmar Company, when you procure the loan (through any source), we will pay you the brokerage stipulated. There is no other construction that can be logically placed on it. The evidence supports this construction and the jury have so found.

Here an executory contract was created,

mutually binding on the parties and enforceable against each other. Appellant could sue to enforce the loan had he not breached the contract, and in the same way appellee could sue to enforce the contract and recover the brokerage or commission stipulated.

Upon the facts submitted the contract represents one where the well-known principle of the law applicable to real estate brokers applies. For upon the finding of the jury, supported by all the evidence, B. F. Dittmar Company procured the Lincoln National Life Insurance Company to make the loan upon the terms and conditions set out in the application of Harrison Building Company. Appellant was promptly notified that the Insurance Company had accepted the loan and that it was willing and able to carry it out, and that the money was available for that purpose.

Appellee went to trouble and expense in securing the loan, making various efforts to conclude it. Appellant did not comply with his part of the agreement at all. He delayed, for instance, in furnishing the abstract of title agreed upon, though frequently so urged until after much time had been used in these negotiations. Along about the 15th of June—

"We spoke to the Doctor and told him that we were ready to go ahead and put the loan through, and we wanted to know if he didn't have the abstract ready; that it had been running a long time and that we were anxious to go ahead; and the Doctor said: 'Well, you fellows just forget that; I have decided I won't need that money: lend it to some one else, and if I need it I will call on you later for it.' And Mr. Dittmar told him that the application was of long standing and asked him if anything was wrong with it, and he said: 'You fellows are charging me too much money.' And Mr. Dittmar asked if he had been negotiating with anybody else; he said, 'Yes, I will tell you frankly I have made application with another concern and am going to get the money from them.'"

At that time the appellant had begun negotiations with the Central Trust & Loan Company and had closed the deal, giving the same securities that were to be given appellee, that is, a deed of trust on the land, and thereby not only breached the contract but placed it beyond their own power to perform. The Harrison Company could not thus avoid its liability for the payment of said brokerage or commission by refusing or neglecting to accept the loan when so tendered. But for the breach by appellant the contract would have been carried out and the money loaned. The failure of consummation under such conditions could not be of any detriment to appellee's recovery of the damages, or, more plainly speaking, the brokerage commission resulting from the breach. Lundell v. Allen (Tex. Civ. App.) 244 S. W. 1098; Park v. Swartz, 110 Tex. 564, 222 S. W. 156. In the latter case Justice Phillips, speaking for the court, said:

"The loss suffered by the plaintiff is the measure of his damages. That loss is the amount as fixed by the contract which he would have earned but for the wrongful conduct of the defendants in preventing him from earning it. Upon establishing the contract, his readiness and willingness to perform it, and that he was denied opportunity to perform it through its wrongful breach by the defendants, rendering its performance by him impossible, the plaintiff made out his case; and prima facie was entitled as damages to the amount which under the contract he would, presumably, have earned if his rights had been respected."

In Curlee v. Phelps (Tex. Civ. App.) 242 S. W. 517, Justice Huff, speaking for the court, held:

"When the appellee had found a purchaser who was ready and willing to buy upon the terms proposed, he had performed his part of the contract, and the commission was due, although, through the fault of the appellant, the sale was not consummated."

When appellant breached his contract and put himself beyond the power to perform, by completing the loan with security on the same property which was intended to stand as security for the Lincoln National Life Insurance Company's loan, and expressly refused to accept the money tendered, the full amount of the commission became, eo instante, due and payable, for otherwise the Harrison Building Company might prevent the Dittmar Company from ever collecting the remaining 2½ per cent. commission for the services performed. Knisely v. Leathe (Mo. Sup.) 178 S. W. 453. This case, though a Missouri case, is very much in point. Willson et al. v. Crawford et al., 61 Tex. Civ. App. 580, 130 S. W. 227; Burnett v. Edling, et al., 19 Tex. Civ. App. 711, 48 S. W. 775; Danciger v. Wood et al. (Tex. Civ. App.) 240 S. W. 694.

The trial court did not therefore err in rendering judgment for the full amount on the evidence, and the assignment is overruled.

It may be said that the entire contract was not in writing, but partly in parole and partly in writing. There is no stipulation as to the loan being procured from Lincoln Life Insurance Company, but it was understood that B. F. Dittmar might procure it from some one else or that he could advance it, so that it might for the reasons stated come under the rule of a contract construed as a parol contract, partly written and partly in parol. 13 Corpus Juris, 246. But when Dittmar secured the loan from the said insurance company and notified appellant on the 21st and again on the 23d day of May, 1927, the minds of the parties met, and from that time the contract existed. Bogata Merc. Co. v. Outcault Adv. Co. (Tex. Civ. App.) 184 S. W. 333.

B. F. Dittmar Company was by Harrison Building Company expressly appointed to

secure a loan, and it was to be paid the commissions named for the services to be performed. The application, in bold type, at the head stated: "Application for Loan Through B. F. Dittmar Company, Inc." Dr. Harrison, the president of the company, was introduced to the loan representative of the said Lincoln Insurance Company on May 12, and advised of his purpose in seeing him, and Dr. Harrison was advised that Dittmar Company was making this loan through the said insurance company, and that Dittmar Company would handle all the details connected with it, securing abstract of title, etc. and pass the loan to the insurance company. This was thoroughly consistent with its duty in securing the loan for appellant and closing same and was well known to both parties. Bass v. Tolbert, 51 Tex. Civ. App. 437, 112 S. W. 1077; Gilliland et al. v. Ellison et al. (Tex. Civ. App.) 137 S. W. 168; Burk v. Estes (Tex. Civ. App.) 236 S. W. 514.

[3] 'It is the settled law that inconsistencies and conflicts in contracts must be construed together so as to give effect to the intention of the parties as collected from the whole contract, and likewise all the surrounding circumstances will be considered for the purpose of ascertaining the real intention of the parties to such contract. Corbin v. Booker (Tex. Civ. App.) 184 S. W. 696; Thompson v. Waits (Tex. Civ. App.) 159 S. W. 82; Stone v. Robinson (Tex. Civ. App.) 180 S. W. 135.

However, we do not think there are any inconsistencies in the contract that create any doubt as to its meaning and purpose, and we overrule the contention.

We have considered each and every proposition claiming error, and, finding none that should cause a reversal, they are each severally overruled, and the judgment of the trial court is affirmed.