**ANDERSON–BERNEY BLDG. CO. v. SWAN et al.**

No. 13965.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 13, 1939.

Rehearing Denied Nov. 24, 1939.

270

Wm. J. Berne, of Fort Worth, for appellant.

Cantey, Hanger, McMahon, McKnight & Johnson and J. A. Gooch, all of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

This suit was an action to recover a broker's commission for negotiating a loan on certain real estate in the City of Fort Worth; and this appeal has been prosecuted by the Anderson-Berney Building Company, defendant, owner of the property, from a judgment in favor of plaintiffs, J. H. Swan, J. M. Helton and J. R. Thomas, brokers, for a commission of $5,000, with interest and costs of suit.

The trial was before the court without a jury, and the trial judge filed the following original findings of fact and conclusions of law, on which the judgment was rendered, which reflect the facts alleged in plaintiffs' petition as the basis for recovery of the brokers' commission sought and recovered:

"Findings of Fact.

"1. On October 20, 1936, Anderson-Berney Building Company, by B. L. Anderson, in writing authorized plaintiff, J. M. Helton, to procure a loan for the Anderson-Berney Building Company of $300,000.-00, bearing interest at 4½ per cent per annum, payable semi-annually, to be secured by a first mortgage on real estate in Fort Worth, Texas. The complete authorization was as follows:

" 'Fort Worth, Tex., October 20, 1936.
" 'J. M. Helton
" 'Fort Worth, Texas.
" 'Dear Sir:
" 'You are hereby authorized to procure for me a loan of Three Hundred Thousand Dollars ($300,000.00) bearing interest at 4½% per annum, payable semi-annually,

to be secured by First Mortgage on the following described real estate, situated in the City of Fort Worth, State of Texas: Lot 5, Block 6, and Lot 4, Block 3, Hirschfield Addition.

" 'The undersigned agrees to furnish you at its own expense, a satisfactory abstract of title as soon as you advise the undersigned of the approval of this application for a loan, and if within sixty days thereafter you shall be ready to complete said loan, the undersigned agrees to pay you for services rendered in that behalf the sum of Six Thousand Dollars ($6,000.00); also to pay for recording mortgage and all other instruments required, and also agrees to pay for the expense of examination of title and preparation of papers, by an attorney to be selected by you for that purpose, a sum not to exceed Five Hundred Dollars ($500.00). And also agrees that if the title is defective and said defect is not or cannot be cured, to pay the title examination fee.

" 'Anderson Berney Building Company,
      " 'By: B. L. Anderson, President.'

"The obligation on Helton by virtue of the authorization was to procure $300,000.-00 at 4½%, payable semi-annually and as compensation therefor he was to receive the sum of $6,000.00, which was 2% of the amount sought.

"The authorization on the part of B. L. Anderson for the Anderson-Berney Building Company was with full authority of and bound the Anderson-Berney Building Company.

"2. On October 22, 1936, Anderson-Berney Building Company by its duly authorized president, B. L. Anderson, executed a loan application presented to him by plaintiffs to the Connecticut General Life Insurance Company, which contained the following provision:

" 'The principal and interest shall be payable at the place the lender may direct, and the note, mortgage and other papers shall be in a form approved by the mortgagee.'

"The amount sought in the application was $300,000.00 on terms identical with the authorization to Helton.

"3. Thereafter by mutual consent between the Connecticut General Life Insurance Company, the company to which the application of Anderson-Berney Building Company was directed for the loan, and Anderson-Berney Company, the amount in the application was reduced to $250,000.00

in lieu of $300,000.00; and Anderson-Berney Building Company on December 2, 1936, within sixty days of the original authorization of Helton, agreed to accept the loan of $250,000.00, on terms and conditions consistent with those in the authorization to Helton of October 20, 1936, and the application to the Connecticut General Life Insurance Company of October 22, 1936, and furnished the other necessary instruments and things called for in the contract of employment with Helton toward the closing of the loan, including attorneys' fees, abstract of title, surveyor's plats, and various other matters relative to the closing of the loan.

"4. On December 31, 1936, the board of directors and stockholders of Anderson-Berney Building Company passed a resolution authorizing the borrowing of $250,-000.00 from the Connecticut General Life Insurance Company on the forms prepared and furnished for execution by said Connecticut General Life Insurance Company, and authorized and had properly signed the note and deed of trust as prepared by the Connecticut General Life Insurance Company, for the receipt of the $250,000.00 loan.

"5. Thereafter Anderson-Berney Building Company and the Connecticut General Life Insurance Company entered into discussions relative to objections raised by B. L. Anderson after the note and deed of trust had been signed by Anderson Berney Building Company concerning the form of the deed of trust and other instruments, and after the objections of Anderson-Berney Building Company had been raised, they were met and cured by the Connecticut General Life Insurance Company.

"6. The usual and customary brokerage fee for procuring a loan in Fort Worth, Tarrant County, Texas, is two per cent of the principal borrowed.

"7. Plaintiff Helton agreed to divide his commission into three parts at the time he secured the authorization from Anderson-Berney Building Company with his, Helton's, associates, and that plaintiffs, Helton, Swan and Thomas, were each to receive one-third of the commission.

"8. The loaner procured by plaintiffs was ready, able and willing to make the loan of $250,000.00 upon the terms set forth in the authorization to Helton and upon the terms embodied in the application to the Connecticut General Life Insurance Company

and executed by Anderson-Berney Building Company.

"9. Anderson-Berney Building Company, without legal excuse, refused to consummate the $250,000.00 loan with the Connecticut General Life Insurance Company.

"Conclusions of Law.

"1. The obligation incurred by J. M. Helton in the authorization of October 20, 1936, were fully performed on his part within the time required therein.

"2. A 2% commission was chargeable to Anderson-Berney Building Company on the amount they agreed to accept, towit, $250,-000.00, the total commission thereon being $5,000.00."

Those findings and conclusions of law, which were filed November 12th, 1936, cover the ultimate issues of fact and law on which the judgment was based.

After the filing of those original findings and conclusions, defendant filed a motion for 22 additional findings of fact and five additional conclusions of law. That motion was granted and on November 18th, 1936, the court filed additional findings and conclusions on the points requested, which are as follows:

"No. 1. The letter dated November 13, 1936, to James R. Thomas was a chain in the negotiations between Anderson Berney Building Company and the loaner, leaving the final acceptance of the loan of $250,000.00 to be made on forms satisfactory to the Connecticut General Life Insurance Company.

"No. 2. Anderson Berney Building Company accepted the offer from the Connecticut General Life Insurance Company for a $250,000.00 loan on or about December 1, 1936.

"No. 3. The acceptance of the loan from Connecticut General Life Insurance Company by Anderson Berney Building Company constituted a loan contract, complete in so far as the broker was concerned.

"No. 4. The date on which J. M. Helton's services were complete was December 1, 1936.

"No. 5. It was immaterial whether the directors of the Anderson-Berney Building Company had actual knowledge of the contents of the note and deed of trust mentioned in the resolution passed on that date, for the reason that the note and deed of trust were in their possession when the resolution was passed.

"No. 6. The reason the Board of Directors of Anderson Berney Building Company passed a resolution at the particular time they passed same is immaterial.

"No. 7. The signatures and the signed resolution on the note and deed of trust support the findings of fact to the effect that the note and deed of trust were signed.

"No. 8. Answered under No. 7.

"No. 9. As to whether or not B. L. Anderson had actual knowledge of the contents of the instrument he signed is immaterial. The instrument was before him at the time he signed it.

"No. 10. The reason B. L. Anderson had for signing on December 31, 1936, is immaterial.

"No. 11. The intent of B. L. Anderson in signing the note and deed of trust is immaterial.

"No. 12. The note and deed of trust signed by B. L. Anderson as president of Anderson Berney Building Company were never actually delivered to the insurance company or anyone acting for it.

"No. 13. At the time of the acceptance of the loan by Anderson Berney Building Company the insurance company contemplated and intended that the loan would be secured by the form of deed of trust used by the company.

"No. 14. The deed of trust delivered by Sansom to B. L. Anderson on December 31, 1936, did not contain terms additional to and more onerous on the Anderson Berney Building Company than the terms set out in previous negotiations.

"No. 15. The meaning of the word 'consistent' as used in the court's finding of fact No. 3 is used in its ordinary sense.

"No. 16. (a) Anderson Berney Building Company, having executed a loan application which included a willingness on the part of Anderson Berney Building Company to sign papers on the forms presented by Connecticut General Life Insurance Company, agreed to the matters set forth in paragraph (a) of the requested findings.

"(b) The terms of the deed of trust were specifically agreed to in Anderson Berney Building Company's application to the Connecticut General Life Insurance Company for a loan.

"(c) The terms of the deed of trust were agreed to by Anderson Berney Building Company by virtue of its loan application.

"(d) The terms of the trust deed were agreed to by virtue of Anderson Berney Building Company's loan application.

"No. 17. The trust deed delivered by Mr. Sansom to Mr. Anderson December 31, 1936, complied with the agreed loan between Anderson Berney Building Company and the insurance company.

"No. 18. The contract for a loan, complete in all of its terms, was agreed upon by Messrs. Anderson and Sansom representing, respectively, the Anderson Berney Building Company and the insurance company.

"No. 19. The contract for a loan, complete in all of its terms, was agreed upon by Anderson Berney Building Company and the insurance company in February or March, 1937.

"No. 20. The date on which Anderson Berney Building Company and the insurance company agreed on all the terms of the loan contract was February 5, 1937.

"No. 21. Anderson Berney Building Company furnished the insurance company a satisfactory abstract of title on December 10, 1936.

"No. 22. The date on which B. L. Anderson had actual knowledge of the contents of the trust deed delivered December 31, 1936, by Sansom is immaterial, in that he had the deed of trust before him on said date.

"Findings on Issues of Law Requested by the Defendant.

"No. 1. The counter offer of the loan by the insurance company to Anderson Berney Building Company was a step in the chain after the application of Anderson Berney Building Company to the Connecticut General Life Insurance Company for a loan, and the counter-offer and its acceptance related back to the original application.

"No. 2. Plaintiffs earned their commission by obtaining from the insurance company a $250,000.00 loan.

"No. 3. The agreement to execute the note and deed of trust on forms approved by the Insurance Company was binding on Anderson Berney Building Company.

"No. 4. The acceptance of the loan, together with the resolution of the board of directors of Anderson Berney Building Company, bound Anderson Berney Building Company to take the loan on the terms of the note and deed of trust mentioned.

"No. 5. The signing by B. L. Anderson as President of Anderson Berney Building Company of the note and deed of trust mentioned in the Court's findings of fact No. 4 legally bound Anderson Berney Building Company to take the loan, when taken in connection with its acceptance of the loan of $250,000.00 on the terms set out in the note and deed of trust."

Appellants' assignment of error to the findings and conclusions of date November 12th, 1935, was that the court erred in rendering judgment in favor of plaintiffs, Swan and Thomas, jointly with plaintiff Helton, because defendants' contract of employment was with Helton alone; and that his agreement to divide the commission with them in consideration of their joint efforts to assist him in his undertaking, would not furnish a sufficient basis for their participation with Helton in the recovery.

Defendants filed no plea of misjoinder of Thomas and Swan as plaintiffs, and since no possible harm to defendants appears by permitting them, with Helton's consent, to share in the recovery to which Helton alone was entitled under his employment as broker, this assignment is overruled, especially so since the evidence showed that defendants' negotiations with respect to the loan were in part with Thomas and Swan, as joint undertakers with Helton.

It is apparent that the additional findings and conclusions, filed November 18th, were in part a repetition of facts and conclusions filed November 12th, and in part of evidence in support thereof. Numerous assignments of error are presented attacking those additional findings and conclusions as being without sufficient support in the evidence.

This announcement in 3 Tex.Jur., para. 771, page 1102, is supported by many decisions there cited: "The findings of the trial court in a case tried without a jury have the same force and are entitled to the same weight as the verdict of a jury; and it is well settled that such findings will not be disturbed by an appellate court where there is some evidence to support them, even though the evidence is conflicting and the appellate court might have reached a different conclusion therefrom. It is also well settled that findings of fact by the trial court will be upheld unless they are manifestly erroneous, and that they will be overruled only where they are without any evidence to support them, or where they are so

against the great weight and preponderance of the evidence as to be manifestly wrong."

We deem it unnecessary to discuss in detail the numerous criticisms of the additional findings and conclusions filed November 18th, on the ground that they were contrary to the evidence adduced, especially in view of this contention presented near the beginning of appellants' briefs: "The issue in this entire case is whether or not the A. B. Co. ever agreed to take the loan on the terms of the insurance company's form of trust deed."

Furthermore, it is our conclusion that many of those criticisms involve matters only incidental to ultimate issues of fact and conclusions of law, on which a recovery was awarded. And the additional findings and conclusions tend to support rather than overcome the court's findings on those ultimate issues of fact and law; nor do they purport to cover all the evidence bearing thereon. Hence, all assignments presented thereto are overruled.

The following announcements are in accord with a well settled rule of decisions of this state: "There are three instances in which, or three methods by which, a broker may earn a commission under an agency contract for the sale or exchange of real estate: (1) by procuring from a purchaser a valid, enforceable contract for sale or exchange of the properties listed, on the terms proposed by the vendor; (2) by producing a purchaser to whom a sale or exchange is in fact made on terms satisfactory to the vendor; (3) by producing a purchaser ready, able and willing to buy or exchange on terms specified in the contract of employment, and who offers so to do." 7 Tex.Jur., para. 54, p. 444.

"Again where the owner, who has quoted his property for a cash sale has offered the buyer terms which have been agreed to, the broker is held entitled to recover in case the seller refuses to complete on those terms." Idem, para. 56, p. 446.

"When the seller enters into a binding contract with the purchaser acceptable to him, the seller assumes the risk as to whether or not the purchaser will be in position to perform his part of the contract, and when such contract is so entered into by the seller, the agent has performed all the duties that he can perform under his employment." Idem, para. 69, page 465.

"The broker is none the less the procuring cause of the transaction where the purchaser has been found by his efforts and through his instrumentality, although the terms are other than those on which the property was listed with the broker, the alteration of the terms having been voluntary on the part of the principal. Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295, 297; Hodde v. Malone Real Estate Co., Tex.Civ. App., 196 S.W. 347. This rule applies, regardless of whether the provisions and terms are less or more favorable to the owner than those quoted to the broker." Idem, para. 84 page 481.

See, also, 7 Tex.Jur., para. 74, page 470; Moss & Raley v. Wren, 102 Tex. 567, 113 S.W. 739, 120 S.W. 847; Hamburger & Dreyling v. Thomas, 103 Tex. 280, 126 S.W. 561; West Realty & Investment Co. v. Hite, Tex.Com.App., 283 S.W. 481; Harrison Building Co. v. B. F. Dittmar Co., Tex.Civ. App., 4 S.W.2d 1038; Dockery v. Durham, Tex.Civ.App., 3 S.W.2d 514; Curlee v. Phelps, Tex.Civ.App., 242 S.W. 517; Eastland Oil Co. v. Fenoglio, Tex.Civ.App., 102 S.W.2d 1092.

The judgment of the trial court is sustainable on either of two theories: First, by virtue of the finding that plaintiffs procured for defendants an offer by the Connecticut General Life Insurance Company to lend defendants $250,000, in lieu of the $300,000 first authorized, which offer was duly accepted by the defendants, and became a contract binding on both parties; second, at all events, by procuring from the insurance company its offer to lend to the defendants the sum of $250,000, the amount plaintiff Helton was authorized to borrow, and which loan the insurance company was ready, able and willing to make, but was not made, through no fault of plaintiffs, and that, too, in the absence of any contract by defendants to borrow the money after the loan was offered.

For the reasons noted, the judgment of the trial court is affirmed.