

# NUMBER 13-17-00104-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

KEVIN MARTIN, JAMIE MARTIN,
AND ASHLEY LUSK,                                                    Appellants,

v.

NEWFIELD EXPLORATION COMPANY;
ROSETTA RESOURCES OPERATING, L.C.
AND DYNAMIC PRODUCTION, INC.,                                        Appellees.

On appeal from the 156th District Court
of Live Oak, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Hinojosa
### Memorandum Opinion by Justice Benavides

This is an appeal from orders granting appellees Newfield Exploration Company

and Dynamic Production Inc.'s (collectively Newfield, unless otherwise noted) no-evidence

and traditional motions for summary judgment in an oil and gas dispute with appellants

Kevin Martin, Jamie Martin, and Ashley Lusk (collectively the Martins).  By two issues,

which we treat as one, Martin asserts that the trial court erred by granting summary judgment in favor of Newfield. We affirm.

## I. BACKGROUND

In 2001, the Martins entered into oil, gas, and mineral leases with Mesquite Development (the Martin Leases) for a term of five years, concerning approximately 600 acres of land located on Block 84 of the Dr. Charles F. Simmons Nueces River Farm.[1] In 2006, the Martins extended and amended those same lease agreements with Mesquite Development. As provided by Newfield in its briefing, the Martin Leases are best illustrated by the attached graphic to this opinion labeled "Appendix 1" and shaded in light gray.

In 2007, Mesquite Development assigned the Martin Leases to Rosetta Resources Operating, L.P.[2] In October 2007, Rosetta, Newfield, and Dynamic agreed to a "Designation of Pooled Unit" created by Block 76 and Block 84 of the Dr. Charles F. Simmons Nueces River Valley Subdivision to form a "675-acre pooled unit" with the purpose to explore, develop and produce gas (the Martin Unit). The Martin Unit is composed of four tracts of land, which includes 315 acres of the Martin Leases and other non-Martin properties. Not all of the tracts composing the Martin Leases were incorporated into the Martin Unit. As gathered from the record and provided by Newfield in its brief, the Martin Unit is best illustrated by the attached graphic to this opinion labeled "Appendix 2" and shaded in black. The non-unitized acreage from the Martin Leases remains shaded in light gray.

---

[1] More specifically, the total acreage was composed of Farm Tracts 3567, 3568, 3569, 3570, 3571, 3572, 3573, 3574, 3575, 3576, 3577, 3578, 3579, 3580, 3581, and 3583, Block 84, Dr. Charles F. Simmons Nueces River Farm Subdivision.

[2] Although it was named as a party at the trial court, Rosetta Resources Operating, L.P. is not a party to the present appeal.

In 2008, Rosetta assigned a partial interest of: (1) fifty-five percent of all rights, title, and interest in and to the oil, gas, and mineral leases to Newfield Exploration Company of the Martin Leases that were included in the Martin Unit; and (2) five percent of all rights, title, and interest in and to the oil, gas, and mineral leases to Dynamic Production, Inc. of the Martin Leases that were included in the Martin Unit.

In 2009, Newfield filed a designation of pooled unit on various other properties totaling 570 acres located near the Martin Unit to establish Newfield Exploration Company-Simmons Subdivision Unit No. 1 Well (the Simmons Unit). According to the record, the Simmons Unit's northwest corner was separated from the southwest corner of the Martin Leases by one tract of land known as Farm Tract 3584. As provided by Newfield in its briefing, the Simmons Unit's location is best illustrated by the attached graphic to this opinion labeled "Appendix 3." The Simmons Unit is shaded in dark gray, the Martin Unit remains shaded in black, and the non-unitized portion of the Martin Leases remains shaded in light gray.

In 2014, Martin sued Newfield for failing to protect against drainage of the Martin Unit as mandated by the 2006 lease agreements, and for failing to spud an offset well or release Martin Unit within the time period required by the 2006 lease agreements. Martin further alleged that in the event that Newfield was not liable under the 2006 lease agreements, Newfield was liable under the 2001 lease agreements. In the alternative, Martin pled that Newfield wrongfully pooled the Martin Unit, and that it "did not hold all of the required acreage or have the authority to drill to the depth" of the Martin Well. In their lawsuit for damages, Martin asserted causes of action for: (1) breach of contract, (2) common-law fraud, (3) negligence, (4) negligent misrepresentation, (5) conversion, (6)

3

wrongful pooling and mineral trespass, (7) violations of the Texas Theft Liability Act, (8) breach of fiduciary duty, and (9) breach of implied covenants.

Subsequently, Newfield filed no-evidence and traditional motions for summary judgment claiming that:

(1) no evidence showed that: (a) the 2006 lease agreements were in effect at the time of the lawsuit; or (b) Newfield has any interest in the 2006 lease agreements; and

(2) Newfield established as a matter of law that: (a) it had no duty to fulfill the drainage covenant relied upon by Martin because they were not assigned to them; and (b) even if such a duty existed, because the Simmons Unit does not "adjoin" the Martin Leases, Newfield's duty to prevent drainage was never triggered.

After response and hearing, the trial court granted Newfield's summary judgment. Newfield later moved for another no-evidence and traditional motion for summary judgment on Martin's added claims of wrongful pooling and mineral trespass. Those motions were also granted.

The orders granting summary judgment—neither of which specified the grounds on which they were granted—were severed from the cause and were made into final judgments. This appeal followed.

## II. SUMMARY JUDGMENTS

By two issues, Martin asserts that the trial court erred by granting summary judgment because: (1) the lease required Newfield to protect against drainage, and the obligation to spud an offset well or release the Martin Lease was triggered; and (2) a fact issue exists on whether Newfield has an obligation to spud an offset well or release the Martin Lease because Newfield enjoyed the benefits of assignment of the Martin Lease.

4

**A.     Standard of Review**

**1.  No-Evidence Summary Judgment**

A motion for summary judgment may be brought on no-evidence or traditional grounds.  *See* TEX. R. CIV. P. 166a(c), (i).  A motion for no-evidence summary judgment is equivalent to a motion for pretrial directed verdict, and we apply the same legal sufficiency standard on review.  *Nalle Plastics Fam. Ltd. P'ship v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied).  Such a motion should be granted if there is no evidence of at least one essential element of the claimant's cause of action.  *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).  After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.  TEX. R. CIV. P. 166a(i).  All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element.  *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).  Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact.  *Id.*  More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions.  *Id.*  In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not.  *Nalle Plastics*, 406 S.W.3d at 199.

### 2. Traditional Summary Judgment

We review the trial court's granting of a traditional motion for summary de novo. *Id.* When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The movant bears the burden of proof, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Nalle Plastics*, 406 S.W.3d at 200. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.*

### B. Discussion

### 1. Waiver

As a preliminary matter, we must first set the parameters of what is presently before us to review. Newfield argues in its briefing that Martin waived any arguments on appeal that: (1) the duty to protect the non-unitized Martin Leases acres from drainage was triggered when the Martin Unit well was drilled in 2008, or (2) the lease clause quoted above is ambiguous, because neither argument was made to the trial court. We agree.

Issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment. *McConnell v. Southside Ind. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *see also* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Our review of Martin's response to Newfield's motions for summary

6

judgment show that Martin focused their arguments on whether Newfield's duty to protect against drainage was triggered when Newfield began drilling the Simmons Unit, not the Martin Unit. Furthermore, nothing in Martin's response asserts that the clauses at issue were ambiguous. Accordingly, without regard to their merits, we conclude that those arguments are waived, and we will not consider them on appeal. *See id.*

### 2. Summary Judgment Analysis

Turning to the merits of the summary judgment, the lease provision at issue between the parties states the following identical language in the 2001 lease agreements and 2006 lease agreements:

> Notwithstanding anything contained herein to the contrary, it is further agreed that in the event a well is drilled on or in a unit containing part of this acreage or is drilled on acreage adjoining this Lease, the Lessor, or its agent(s) shall protect the Lessee's undrilled acreage from drainage and in the opinions of reasonable and prudent operations, draining is occurring on the un-drilled acreage, even though the draining well is located over three hundred-thirty (330) feet from the un-drilled acreage, the Lessee shall spud an offset well on said un-drilled acreage or on a unit containing said acreage within twelve (12) months from the date the drainage began or release the acreage which is un-drilled or is not part of a unit which is held by production.

Because it is dispositive, we will address Newfield's alternative argument supporting the trial court's traditional summary judgment that: even assuming Newfield owed Martin a duty to prevent drainage and spud an offset well, such a duty was not triggered by Newfield's drilling of the Simmons Unit.[3] Stated another way, Newfield argues that even if it had a duty to prevent drainage and spud an offset well under the lease-agreements' clauses, such a duty was not triggered because the Simmons Unit was not

---

[3] *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993) ("When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious."); *see also* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

7

"adjoining" the Martin Leases as a matter of law, according to the lease agreements. We agree.

An oil and gas lease is a contract, and its terms are interpreted as such. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 210–11 (Tex. 2011). In construing an unambiguous oil and gas lease, we seek to enforce the intention of the parties as it is expressed in the lease. *Id.* Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Op. Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *Kingsley Props., LP v. San Jacinto Title Servs. of Corpus Christi, LLC*, 501 S.W.3d 344, 348 (Tex. App.—2016, no pet.).

The duty-triggering language in the relevant lease-agreement clauses at issue in this case states that "in the event a well is drilled on or in a unit containing part of this acreage *or is drilled on acreage adjoining this Lease* . . ." the party shall protect the undrilled acreage from drainage and spud an offset well within twelve months from the date the drainage began. (emphasis added). For reasons discussed above, we will focus solely on whether the duty was triggered in this case because the Simmons Well was "drilled on acreage adjoining" the Martin Leases. *See* TEX. R. CIV. P. 166a(c). To answer this question, we look to the definition of "adjoining."

Nearly one-hundred years ago, the Amarillo Court of Appeals defined "adjoining" as "lying next to, adjoining to, uniting, being in contact." *Curlee v. Phelps*, 242 S.W. 517, 520 (Tex. Civ. App.—Amarillo 1922, no writ). In 1934, the Beaumont Court of Appeals upheld a no-evidence challenge to a jury verdict that two tracts of land separated by an 80-acre tract of land were not "adjoining lands." More recently, the Fort Worth Court of

8

Appeals utilized the Black's Law Dictionary definition of adjoining as "'touching' or 'sharing a common boundary.'" *Titan Op., LLC v. Marsden*, No. 02-14-00303-CV, 2015 WL 5727573, at *8 n.19 (Tex. App.—Fort Worth Aug. 27, 2015, pet. denied) (quoting BLACK'S LAW DICTIONARY 49 (10th ed.)). Because the lease agreements in this case do not provide contrary definitions, we give "adjoining" its plain, ordinary, and general meaning, and hereby adopt the definitions provided by our sister courts.

Utilizing the definition of "adjoining" and examining the record in this case, we conclude as a matter of law that the Simmons Unit is not "acreage adjoining" the Martin Leases because Tract 3584 separates the two pieces of acreage. Therefore, assuming that a duty to prevent drainage and spud an offset well existed in this case, such a duty was not triggered as a matter of law because the Simmons Unit does not adjoin the Martin Leases as required by the lease agreements. We conclude that the trial court did not err in granting Newfield's traditional motion for summary judgment on this ground, which is fatal to all of Martin's causes of action against Newfield.

We overrule Martin's issues.

### III.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice


Delivered and filed the
5th day of April, 2018.

9

## Appendix 1

| | |
|---|---|
| 3569 | 3568 |
| 3570 | |
| 3571 | |
| 3572 | **Martin Family** |
| 3573 | **Leases** |
| 3574 | |
| 3575 | |
| 3576 | |
| 3577 | 3567 |
| 3578 | |
| 3579 | |
| 3580 | |
| 3581 | |
| 3582 | |
| 3583 | |
| 3584 | |

| | | | |
|---|---|---|---|
| 3461 | | 3476 | 3487 |
| 3462 | | 3475 | |
| 3463 | | 3474 | |
| 3464 | | 3473 | |
| 3465 | | 3472 | |
| 3466 | | 3471 | |
| 3467 | | 3470 | |
| 3468 | | 3469 | |
| 3569 | | 3568 | |
| 3570 | | | |
| 3571 | | | |
| 3572 | | **The Martin Unit** | |
| 3573 | | | |
| 3574 | | | |
| 3575 | | | |
| 3576 | | | |
| 3577 | | 3567 | |
| 3578 | | | |
| 3579 | | | |
| 3580 | | | |
| 3581 | | | |
| 3582 | | | |
| 3583 | | | |
| 3584 | | | |

| | | | | |
|---|---|---|---|---|
| | 3461 | | 3476 | 3487 |
| | 3462 | | 3475 | |
| | 3463 | | 3474 | |
| | 3464 | | 3473 | |
| | 3465 | | 3472 | |
| | 3466 | | 3471 | |
| | 3467 | | 3470 | |
| | 3468 | | 3469 | |
| | 3569 | | 3568 | |
| | 3570 | | | |
| | 3571 | | | |
| | 3572 | | **The Martin Unit** | |
| | 3573 | | | |
| | 3574 | | | |
| | 3575 | | | |
| | 3576 | | | |
| | 3577 | | 3567 | |
| | 3578 | | | |
| | 3579 | | | |
| | 3580 | | | |
| | 3581 | | | |
| | 3582 | | | |
| | 3583 | | | |
| | 3584 | | | |
| **The Simmons Unit** | 3813 | 3842 | | |
| | 3814 | 3841 | | |
| | 3815 | 3840 | | |
| | 3816 | 3839 | | |
| | 3817 | 3838 | | |
| | 3818 | 3837 | | |
| | 3819 | 3836 | | |
| | 3820 | 3835 | | |