

NUMBER 13-11-00525-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NALLE PLASTICS FAMILY                                                    Appellant,
LIMITED PARTNERSHIP,

v.

PORTER, ROGERS, DAHLMAN
& GORDON, P.C. AND
PATRICK P. ROGERS,                                                       Appellees.

### On appeal from the County Court at Law No. 2
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Nalle Plastics Family Limited Partnership ("Nalle"), appeals the trial

court's venue ruling and its judgment in favor of appellees, Porter, Rogers, Dahlman &

Gordon, P.C. ("Porter"), a law firm, and one of Porter's partners, Patrick P. Rogers.  By five issues, which we construe as three, Nalle contends that the Nueces County trial court erred by (1) failing to transfer the case to Travis County, (2) rendering summary judgment dismissing all counterclaims brought by Nalle against Porter, and (3) awarding damages and attorney's fees to Porter.  By cross-appeal, Porter challenges the trial court's award of attorney's fees.  We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Nalle is a Texas limited partnership that owns certain real property in downtown Austin, Texas.  In 1991, Nalle's predecessors entered into a long-term commercial lease agreement regarding the subject property.  In subsequent years, the predecessor's interest as lessor was transferred to Nalle and the lessee's interest was transferred to Cypress Industrial L.P. ("Cypress").

Around 2005, a dispute arose between Nalle and Cypress regarding the extent to which Cypress's sub-lessees[1] were free to remodel buildings on the property.  In particular, Nalle believed that the 1991 lease agreement prohibited any lessees or sub-lessees from demolishing, damaging, or destroying any existing improvement on the premises.  Cypress, on the other hand, interpreted the lease agreement to permit modifications to the property without Nalle's approval.[2]

Nalle hired Rogers for legal representation in its dispute with Cypress.  Nalle and

---

[1] The sub-lessees of the property at issue include the Austin Children's Museum, Compass Learning, and a parking lot operator.  The sub-lessees pay rent to Cypress, and Cypress pays rent to Nalle under the terms of the 1991 lease.

[2] Porter contends that the rent amount specified in the 1991 lease was far less than the market allowed and Cypress therefore enjoyed a large rent differential as a result of this arrangement.  According to Porter, Nalle's primary intent in asserting a restrictive interpretation of the 1991 lease was to gain leverage in its efforts to increase the rent amounts payable to it by Cypress.

2

Rogers did not execute a written contract defining the scope of representation or the fee amount. At the outset of the representation, Rogers performed research and wrote a letter to Cypress's counsel reiterating Nalle's position regarding the lease restrictions. Cypress again expressed its rejection of that position.

Rogers then prepared a "Memorandum Concerning Lessor's Interpretation of Lease" (the "Memorandum"), which set forth Nalle's position regarding the lease. The parties dispute who initially suggested that the Memorandum be prepared and filed as a public record; however, it is undisputed that Rogers prepared the Memorandum and advised that it be filed, and it is undisputed that Nalle reviewed and signed the Memorandum and approved its filing pursuant to Rogers's advice. The Memorandum, which refers to the 1991 lease, states in relevant part:

> The purpose of this Memorandum is to set forth of record the Lessors' interpretation of the term "structural component", as well as, "improvement(s)" as applied and used in Paragraphs 4.3 and 8.4 of the Lease.
>
> Paragraph 4.3 of the Lease provides "Lessee further and [sic] represents that Lessee will not demolish, damage, or destroy any portion of existing improvements on the Premises and that no excavation, boring, or disturbance of the subsurface will be made on the Premises."
>
> Paragraph 8.4 of the Lease states, in part, as follows: "Lessee, at Lessee's cost and expense, may make modifications to improvements on the Premises which do not require excavation or disturbance of the subsurface, due to possible contamination of the subsurface, and which do not alter any structural component of any improvement on the Premises."
>
> . . . .
>
> It is the Lessor's interpretation that Paragraph 4.3, when read in context of the Lease, means that the Lessee or any party dealing with the leasehold premises under the Lease cannot demolish, damage, or destroy any portion of existing improvements on the Premises.

3

. . . .

It is the Lessor's interpretation that Paragraph 8.4, when read in context of the Lease, means any leasehold alterations or modifications that involve an alteration of "any structural component of any improvement on the premises" cannot be done under the Lease without approval of the Lessor. It is the Lessors' interpretation that the term "structural component" includes all parts of the existing improvements, each of which has its own structural components. Thus, per the interpretation of the Lessor, any alteration of any leasehold improvements on the Premises would require Lessors' prior approval as each such improvement has its own structural components.

Rogers filed the Memorandum in the public records of Travis County on February 6, 2006.

With Nalle's restrictive interpretation of the lease a matter of public record, Cypress found it increasingly difficult to attract new sub-lessees. Cypress responded by filing suit against Nalle in Travis County. In the suit, Cypress sought a declaratory judgment that it and its sub-lessees are "entitled to modify the interior of the leased premises" and that the Memorandum is "of no force or effect." Nalle counterclaimed for a contrary declaration. Later, Nalle added an allegation that, due to certain infractions, Cypress was in default of the lease and the lease was therefore terminated.[3] In particular, Nalle contended that Cypress violated Austin ordinances by placing parking operations in the city's right-of-way and that it violated state law by performing an excavation in the city's right-of-way without a permit.[4] In an effort to document the infractions, Rogers and Nalle's president Alan W. Nalle[5] repeatedly entered the property

---

[3] The 1991 lease provided that termination of the lease was one of the remedies available to Nalle should Cypress default.

[4] Nalle noted that the 1991 lease agreement obliged Cypress to comply with all local, state, and federal laws and that failure to do so is deemed an event of default.

[5] More precisely, Alan W. Nalle is the president of Nalle Plastics, L.L.C., which is the general partner of Nalle.

4

to take photographs. Cypress replied by adding allegations that Nalle tortiously interfered with Cypress's contracts and prospective business relations, breached the lease agreement, and breached the covenant of quiet enjoyment. Cypress alleged that, as the result of Nalle's actions, the value of its leasehold interest was diminished by nearly $3 million.

Nalle and Cypress participated in mediation. Although negotiations through counsel proved fruitless, a private conference between the principal officers of the companies—unrepresented by counsel—and the mediator resulted in an oral framework of an agreement. Rogers and The Lee Firm, P.C. ("Lee") were hired by Nalle to reduce the agreement to writing. They did so, and a written settlement agreement was filed in the underlying lawsuit. Under the agreement, Cypress agreed to pay as much as $900,000 in additional rent over the life of the lease. In exchange, Nalle agreed to withdraw the Memorandum, accept Cypress's interpretation of the lease, and drop its lease termination claim.

When Porter and Lee billed Nalle for the work done on the case, Nalle refused to pay, claiming that the law firms had offered inadequate representation and bad advice. In order to collect the fees, the law firms filed suit against Nalle in Nueces County for breach of contract and quantum meruit. Nalle moved to transfer the case to Travis County, but the trial court denied the motion on May 20, 2009. Nalle then asserted counterclaims against Porter and Lee for professional negligence. The claims were based primarily on three acts and omissions by Rogers which it alleged constituted legal malpractice: (1) filing the Memorandum in Travis County public records; (2) failing to file a forcible detainer action in justice court to evict Cypress after Cypress allegedly

5

defaulted on the lease; and (3) physically entering the subject property to document the alleged lease infractions, which Nalle asserted led to Cypress's quiet enjoyment claim. Nalle also brought counterclaims for breach of fiduciary duty and fraudulent inducement.

Porter moved for traditional and no-evidence summary judgment on Nalle's counterclaims. It later filed a second motion for summary judgment, also asserting traditional and no-evidence grounds. In a series of orders, the trial court excluded portions of Nalle's summary judgment evidence and granted summary judgment dismissing all of Nalle's counterclaims.

The case proceeded to trial on the law firms' claims for unpaid attorney's fees. The jury found in favor of the law firms and the trial court rendered judgment awarding Porter $132,661 in damages plus $150,000 in attorney's fees and pre- and post-judgment interest.[6] This appeal followed.

## II. DISCUSSION

### A. Venue

By its first issue, Nalle argues the trial court erred in denying its motion to transfer its claims against Porter to Travis County.

#### 1. Applicable Law and Standard of Review

In general, plaintiffs are allowed to choose venue first, and the plaintiff's choice cannot be disturbed as long as suit is initially filed in a county of proper venue. *Henry v. McMichael*, 274 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Crown Cent. LLC v. Anderson*, 239 S.W.3d 385, 388 (Tex. App.—Beaumont 2007, pet. denied). In a suit in which there is more than one plaintiff, each plaintiff must,

---

[6] The final judgment also awarded $45,625.65 in damages to Lee, plus $50,000 in attorney's fees and pre- and post-judgment interest. After filing its appeal, Nalle settled its claims with Lee. Lee is not a party to this appeal.

independently of every other plaintiff, establish proper venue.  TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a) (West Supp. 2011).  "Proper venue" means:  (1) the mandatory venue as provided by statute; or (2) if there is no mandatory venue, the venue provided under the general venue statute or the permissive venue provisions of subchapter C of chapter 15 of the civil practice and remedies code.

The general venue statute states that all lawsuits shall be brought:

(1)    in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2)    in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;

(3)    in the county of the defendant's principal office in this state, if the defendant is not a natural person;  or

(4)    if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

*Id.* § 15.002(a) (West 2002).  Venue may be proper in more than one county under the general, mandatory or permissive venue rules.  *See GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 544 (Tex. 1998).

A plaintiff's choice of venue stands unless challenged by a proper motion to transfer venue.  *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999); *Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.). If venue is properly challenged, the plaintiff has the burden to present prima facie proof that venue is maintainable in the county of suit.  *Chiriboga*, 96 S.W.3d at 678 (citing *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999); TEX. R. CIV. P. 87 (2)(a), (3)(a)). The plaintiff's prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof.  *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993).  The

action must remain in the county of suit if the plaintiff selected a county of proper venue and supported the selection with prima facie proof supporting venue there. *Chiriboga*, 96 S.W.3d at 678. If one plaintiff in a multiple-plaintiff suit cannot independently establish proper venue, that plaintiff's part of the suit must be transferred or dismissed "unless that plaintiff, independently of every other plaintiff," establishes that:

(1) joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure;

(2) maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;

(3) there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and

(4) the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a).

A trial court's venue ruling is evaluated by an appellate court "based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard." *Id.* § 15.003(c)(1). The trial court's determination that venue is proper in a particular county will be upheld on appeal if there is any probative evidence supporting venue in the county of suit, even if the evidence preponderates to the contrary. *Henry*, 274 S.W.3d at 190 (citing *Chiriboga*, 96 S.W.3d at 678); *see Surgitek v. Abel*, 997 S.W.2d 598, 602 (Tex. 1999) ("[I]f the plaintiff offers prima facie proof through pleadings and affidavits that venue is proper, the inquiry is over."). However, conclusive evidence to the contrary can "destroy the probative evidence." *Chiriboga*, 96 S.W.3d at 678 (citing *Ruiz*, 868 S.W.2d at 757).

8

**2.    Analysis**

We first address Porter's contention, raised in its appellee's brief, that Nalle cannot now complain about the trial court's venue ruling because that ruling was subject to immediate interlocutory appeal, which Nalle did not pursue. Porter notes that an interlocutory appeal is available for venue rulings in cases involving multiple plaintiffs, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(b),[7] and it contends that, where an interlocutory appeal is authorized, that generally serves as the exclusive appellate remedy and review after a trial on the merits is barred. Porter cites several instances where courts have held, in other contexts, that the availability of an immediate interlocutory appeal precludes post-trial review. *See, e.g., Matis v. Golden*, 228 S.W.3d 301, 305 (Tex. App.—Waco 2007, no pet.) (holding that an order denying special appearance is reviewable by interlocutory appeal only); *Long v. Spencer*, 137 S.W.3d 923, 926 (Tex. App.—Dallas 2004, no pet.) (same for order appointing receivers); *Bayoud v. Bayoud*, 797 S.W.2d 304, 313 (Tex. App.—Dallas 1990, writ denied) (same for preliminary injunction order).

In *Hernandez v. Ebrom*, the Texas Supreme Court considered a similar issue in the medical negligence context. 289 S.W.3d 316, 318–20 (Tex. 2009). In that case, the

---

[7] Subsection 15.003(b) allows an interlocutory appeal of a trial court's determination that (1) a plaintiff did or did not independently establish proper venue, or (2) a plaintiff that did not independently establish proper venue did not establish the four requirements specified in subsection (a). TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(b) (West Supp. 2011). This is an exception to the general rule, stated in section 15.064, that "[n]o interlocutory appeal shall lie from the determination [of venue questions]." *Id.* § 15.064 (West 2002). Other appellate courts have concluded, and we have agreed, that interlocutory appeals are available under subsection 15.003(b) for any venue determination in a case involving multiple plaintiffs. *See Crown Cent. LLC v. Anderson*, 239 S.W.3d 385, 388 (Tex. App.—Beaumont 2007, pet. denied); *see also Shamoun & Norman, LLP v. Yarto Int'l Group, LP*, Nos. 13-11-00087-CV, 13-11-00256-CV & 13-11-00281-CV, 2012 Tex. App. LEXIS 4384, at *26–33 (Tex. App.—Corpus Christi May 31, 2012, pet. filed) (mem. op. on reh'g); *Thomas v. Hoelke*, No. 04-09-00771-CV, 2010 Tex. App. LEXIS 4501, at *4–5 (Tex. App.—San Antonio June 16, 2010, no pet.) (mem. op.); *Siemens Corp. v. Bartek*, No. 03-04-00613-CV, 2006 Tex. App. LEXIS 3533, at *11 (Tex. App.—Austin Apr. 28, 2006, no pet.) (mem. op.); *Sw. Bell Tel. Co. v. Superior Payphones, Ltd.*, No. 13-05-00661-CV, 2006 Tex. App. LEXIS 1502, at *7 (Tex. App.—Corpus Christi Feb. 23, 2006, pet. dism'd by agr.) (mem. op.).

Court considered a statutory provision providing that a person "may" appeal an interlocutory order denying a motion to dismiss on the basis that the plaintiff failed to file a medical expert report. *Id.* at 318 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2011)). The Court rejected the appellee's contention that the availability of an interlocutory appeal precluded review after trial on the merits. *Id.* at 318–20. The Court stated that "[u]nambiguous statutory language is interpreted according to its plain language unless such an interpretation would lead to absurd results," *id.* at 318 (citing *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999)), and it noted that, according to the Code Construction Act, the word "may" "creates discretionary authority or grants permission or a power." *Id.* (citing TEX. GOV'T CODE ANN. § 311.016(1) (West 2005)). The Court therefore concluded that an interlocutory appeal was not mandatory. *Id.* at 319–20.[8]

Here, the statute authorizing the interlocutory appeal of a venue ruling—section 15.003(b) of the civil practice and remedies code—also uses the word "may." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(b) ("An interlocutory appeal may be taken of a

---

[8] The *Hernandez* Court suggested, however, that if a defendant failed to pursue the available interlocutory appeal under section 74.351 for denial of a motion to dismiss, and the plaintiff then prevailed at trial, the statute would not allow the defendant to challenge the denial of the motion after trial. *Hernandez v. Ebrom*, 289 S.W.3d 316, 320–21 (Tex. 2009). The Court noted that "a statute will not be construed to yield an absurd result," and it found that post-trial dismissal of a claim for failure to timely file a medical expert report would be "unjust and nonsensical" where the merits of the claim had since been proven at trial. *Id.* at 321 (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008)). The Court reasoned that "by requiring timely expert reports, the Legislature intended to reduce frivolous claims" and that "[i]f a full trial occurs and the plaintiff prevails . . . , then the claim could not sensibly be classified as frivolous." *Id.* We note that this rationale does not apply in the context of pre-trial venue rulings. Even if a plaintiff eventually prevails on the merits at trial, as here, there is nothing inherent in that fact that would render the pre-trial venue ruling moot or unreviewable. In other words, a plaintiff's eventual success at trial sheds no light on the relative merits of the defendant's pre-trial motion to transfer venue. Moreover, the intent of the Legislature in enacting the venue statute was not to reduce frivolous claims; rather, it was to ensure that lawsuits are brought and tried in an appropriate forum. Therefore, it would not offend the purpose of the statute—nor would it be "unjust" or "nonsensical," *see id.*—to allow a losing defendant to challenge the pre-trial venue ruling on final appeal.

10

trial court's determination under Subsection (a) . . .").  The plain language of the statute, therefore, suggests that review of a pre-trial venue ruling is available on final appeal. On the other hand, transferring a case to a different forum for a new trial—after full trial proceedings have been completed in the initial forum—may well be considered an "absurd result" that the Legislature could not have intended.  *See Hernandez*, 289 S.W.3d at 318 (citing *Rylander*, 6 S.W.3d at 284).

Assuming, but not deciding, that a venue ruling for which an interlocutory appeal was available but untaken may be challenged on final appeal, we nevertheless conclude that the trial court did not abuse its discretion by denying Nalle's motion to transfer venue.  In its response to Nalle's motion to transfer venue, Porter claimed that Nueces County was a proper venue for its suit because "all or a substantial part of the events or omissions giving rise to the claim occurred" there.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1).  In support of that claim, Porter submitted affidavits by Rogers and Michael S. Lee of The Lee Firm.[9]  Rogers stated in his affidavit that the parties "discussed and understood" the fact that, although Porter has a "branch office" in Austin, its "principal administrative office" is in Corpus Christi.  He further stated that Nalle:

> understood and agreed that some of the necessary work reasonably may be performed out of the [Porter] office in Corpus Christi, Texas; all [Porter] invoices would be issued out of the Corpus Christi, Nueces County, Texas office and that all fees and expense reimbursements due to [Porter] by Nalle were payable to [Porter] at its Corpus Christi principal office.

---

[9] Much of Lee's and Rogers' affidavits was devoted to establishing that proper venue for *Lee's* claims lies in Nueces County.  We do not consider those portions of the affidavits in this analysis because our initial task is to determine only whether Porter, "independently of every other plaintiff, establish[ed] proper venue."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a).  Whether Lee's suit was properly brought in Nueces County is irrelevant to this determination.

11

Rogers noted that the amount due from Nalle included over $30,000 in "expenses advanced by [Porter] for Nalle's benefit" in connection with the Cypress litigation, and he averred that "[b]ased upon the firm's business operation, substantially all of the third-party file expenses are and were paid out of [Porter's] Corpus Christi, Texas office." Rogers further stated that "some [Porter] work [on the Cypress litigation] was in fact performed by [Porter] out of [Porter's] Corpus Christi, Texas office" and that Nalle was required to pay all invoices in Nueces County. Rogers concluded that "[t]he cause of action therefore, for the invoices, arises and/or substantially arises in whole or in part in Nueces County, Texas as that is the county in which the invoices were prepared and per agreement, where the invoices would be paid by Nalle."[10]

Porter's evidence was sufficient to establish a prima facie case that venue was proper in Nueces County. As noted, Rogers averred that "some" work on the Cypress case was done by Porter attorneys in its Nueces County office. He also noted that much of the third-party expenses involved with litigating the Cypress case were paid out of that office. This testimony was probative evidence supporting venue in the county of suit and was not subject to rebuttal, cross-examination, impeachment, or disproof. *See Henry*, 274 S.W.3d at 190; *Ruiz*, 868 S.W.2d at 757. In light of this testimony, we cannot say that the trial court erred in determining that all or a substantial part of the

---

[10] Rogers additionally stated in his affidavit that, regardless of whether Nueces County is a proper venue under the general venue statute, Nalle's motion to transfer should be denied because the criteria listed in subsection 15.003(a) were satisfied. *See id.* § 15.003(a)(1)–(4). In particular, Rogers averred that: (1) Porter's claims were properly joined with Lee's claims, *see* TEX. R. CIV. P. 40; (2) maintaining venue of Porter's claims in Nueces County would not unfairly prejudice Nalle because "the Nueces County courts provide reasonable, fair, impartial and just jurisprudence of cases"; (3) it is "essential and indispensable that the [Porter] claim be tried concurrently and jointly with [Lee's] claim"; and (4) Nueces County is a fair and convenient venue for Nalle "as the distance from Austin to Corpus Christi is only 200 miles" and "Mr. Nalle has traveled to Corpus Christi many times for several social visits." We need not address these contentions because of our conclusion herein that Porter's evidence established that Nueces County is a proper venue under the general venue statute. *See* TEX. R. APP. P. 47.1.

events or omissions giving rise to the claim occurred in Nueces County. The trial court therefore did not err in denying Nalle's motion to transfer. Nalle's first issue is overruled.

**B.     Summary Judgments on Nalle's Counterclaims**

By its second issue, Nalle contends that the trial court erred in granting motions for summary judgment filed by Porter with regard to Nalle's counterclaims.

Nalle's live pleading contained claims against Porter for professional negligence, breach of fiduciary duty, and fraud. Porter's initial motion for summary judgment, filed on October 22, 2009, asserted traditional and no-evidence grounds. After ruling that portions of Porter's summary judgment evidence were inadmissible, the trial court granted Porter's initial summary judgment motion in part and denied it in part on July 1, 2010. In particular, the trial court granted the motion with respect to Nalle's counterclaims asserting that Porter was professionally negligent by: (1) "[f]ailing to file an appropriate forcible detainer action to terminate the lease" (the "forcible detainer claim"); and (2) "[f]ailing to advise Nalle that the filing of the Memorandum would result in the filing of a declaratory action and likely claim for interference, breach of quiet enjoyment, [and] clouding Cypress's leasehold . . ." (the "failure-to-advise claim"). However, the trial court denied Porter's initial motion for summary judgment with respect to Nalle's counterclaims asserting that Porter was professionally negligent by: (1) advising Nalle to file the Memorandum in the public records of Travis County (the "Memorandum claim"); and (2) "[a]dvising Nalle to enter onto the lease property to take

over 3,000 photographs, and thereby giving Cypress grounds for its breach of contract . . . claims" (the "photography claim").[11]

Porter filed a second motion for summary judgment on October 8, 2010. This second motion asserted that new evidence established Porter's right to summary judgment on the following counterclaims brought by Nalle: (1) the Memorandum claim; (2) the photography claim; (3) the claim for breach of fiduciary duty; and (4) the fraud claim. The trial court granted this motion in its entirety on December 2, 2010.

We will address summary judgment as to each of Nalle's counterclaims in turn.[12]

### 1. Standard of Review

A motion for summary judgment may be brought on no-evidence or traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i). A motion for no-evidence summary judgment is equivalent to a motion for pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.) (op. on reh'g). Such a motion should be granted if there is no evidence of at least one essential element of the claimant's cause of action. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the

---

[11] The trial court's July 1, 2010 order granted summary judgment in favor of Porter on Nalle's photography claim insofar as Nalle alleged that Porter's actions gave Cypress grounds for quiet enjoyment and interference claims. In other words, the trial court determined as a matter of law that Porter's alleged negligence did not give rise to Cypress's quiet enjoyment and interference claims; but it determined that there was at least a fact issue regarding whether such alleged negligence gave rise to Cypress's breach of contract claims. The trial court subsequently granted Porter's second summary judgment motion in its entirety as to that latter issue.

The July 1, 2010 order denied Porter's motion for summary judgment on grounds that Nalle's counterclaims were barred by limitations.

[12] Nalle does not challenge, on appeal, the summary judgment rendered on its breach of fiduciary duty claim.

14

motion, and if the non-movant produces evidence raising a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i). All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); *Ortega*, 97 S.W.3d at 772. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Ortega*, 97 S.W.3d at 772 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *see Forbes*, 124 S.W.3d at 172. Conversely, more than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes*, 124 S.W.3d at 172; *Ortega*, 97 S.W.3d at 772 (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 825, 827 (Tex. 2005).

We review the trial court's granting of a traditional motion for summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.). When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166A(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The movant bears the burden of

proof, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

### 2. Applicable Law

To establish a legal malpractice claim, a plaintiff must demonstrate that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 783 (Tex. 2006); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995); *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). If a legal malpractice case arises from prior litigation, the plaintiff must prove that, but for the attorney's breach of his duty, the plaintiff would have prevailed in the underlying case. *Rangel v. Lapin*, 177 S.W.3d 17, 22 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). This "but-for" causation aspect of the plaintiff's burden is known as the "suit-within-a-suit" requirement. *Id.* In addition, "[t]he plaintiff must prove and obtain findings as to the amount of damages that would have been recoverable and collectible if the other case had been properly prosecuted." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009).

The attorney's conduct must be evaluated by the fact-finder based on the information the attorney had at the time of the alleged act of negligence. *Zenith Star Ins. Co. v. Wilkerson*, 150 S.W.3d 525, 530 (Tex. App.—Austin 2004, no pet.). If an

attorney makes a decision which a reasonably prudent attorney *could* make in the same or similar circumstance, it is not an act of negligence even if the result is undesirable. *Cosgrove*, 774 S.W.2d at 665. Attorneys cannot be held strictly liable for all of their clients' unfulfilled expectations. *Id.* An attorney who makes a reasonable decision in the handling of a case may not be held liable if the decision later proves to be imperfect. *Id.* The standard is an objective exercise of professional judgment, not the subjective belief that his acts are in good faith. *Id.*

### 3. Memorandum and Failure-to-Advise Claims

In its live petition at the time of Porter's summary judgment motions, Nalle contended that Porter and Rogers committed professional negligence by, among other things, advising Nalle to record the Memorandum in the public records of Travis County and failing to advise Nalle that filing the Memorandum would result in Cypress filing a declaratory judgment action and a "likely claim for interference, breach of quiet enjoyment, clouding Cypress's leasehold, scaring off potential sub-tenants and devaluing the leasehold." Nalle further asserted that, "[t]o the extent that Rogers claims that he filed the Memorandum because Nalle wished it, Rogers was negligent because he did not advise Nalle against filing the Memorandum."

Porter argued in its first summary judgment motion that it was entitled to summary judgment on the Memorandum and failure-to-advise claims because: (1) the Memorandum was justified and privileged; (2) the filing of the Memorandum was not a proximate cause of injury to Nalle; (3) there was no evidence that Cypress sustained any damages as a result of the filing of the Memorandum; (4) Nalle's admissions under oath negated its claims based on Porter's advice to settle; (5) Nalle is estopped by

17

various provisions of its settlement agreement with Cypress; (6) Nalle's agreement to settle its claims against Cypress was the sole proximate cause of any injury suffered by Nalle; (7) Nalle cannot show that it would have been successful in its lease termination claim against Cypress; and (8) Nalle's claims are barred by limitations. In its second summary judgment motion, Porter argued that: (1) the Memorandum did not provide the basis for any claims by Cypress against Nalle; (2) a lis pendens cannot be filed in a lease interpretation case; (3) Paragraph 11 of the lease authorized the filing of the Memorandum; (4) Nalle's claimed damages were speculative and based upon uncompensable "lost bargaining leverage"; (5) there was no evidence to support the failure-to-advise claim; (6) there was no evidence that the Memorandum caused damages to Cypress; (7) there was no evidence that Cypress had a legitimate claim against Nalle; (8) there was no evidence of proximate cause; and (9) Nalle's claims are barred by estoppel.

In response to Porter's first summary judgment motion, Nalle presented affidavits from attorneys James Cary Barton and John G. Lione Jr. Barton's affidavit stated that he has practiced law in Texas since 1969 and has practiced primarily in the area of commercial real estate law since 1975. He became board certified in commercial real estate law in 1995. Barton reviewed documents related to the Cypress controversy and concluded:

> When [Rogers] filed the [Memorandum] on behalf of [Nalle], he exposed [Nalle] to a claim of placing a cloud on the title of [Cypress]'s leasehold interest in the Leased Premises because that filing was not privileged. If [Rogers] had initiated an action for declaratory judgment on behalf of [Nalle] initially and then recorded the [Memorandum] as a lis pendens, that recording would have been privileged and would not have exposed [Nalle] to a claim of having interfered with [Cypress]'s title.

18

Lione, who has been practicing law in Texas since 1974 and was board certified in commercial real estate law in 1984, also reviewed documents related to the case. Lione's affidavit stated:

11.    I am familiar with the standard of care of a reasonable and prudent attorney in handling the type of case, a commercial real estate dispute which has gone into litigation such as this case currently before the Court.

12.    In my experience, landlords/ow[n]ers of property get into disputes with their tenants over interpretation of the lease and the landlords/owners want their interpretation of record for protection.

13.    One way of handling the above situation is to file a declaratory judgment action on the contested interpretation in the lease and then file a lis pendens in the real property records of the county.

14.    This would prevent any counter-claim for clouding the title or interfering with prospective business relations.

15.    Filing [the Memorandum] in this case fell below the standard of care for a reasonably prudent attorney because it was foreseeable that Cypress would plead that the action clouded the title and interfered with their leasehold. . . .  The standard of care would have been not to file such a document and to advise [Nalle] not to file such a document in the real property records of Travis County without first being in litigation so that [Nalle] could take advantage of the litigation privilege.  [Rogers] fell below the standard of care in this regard.

Also included in Nalle's summary judgment evidence was an affidavit by Nalle's president stating in part:

Rogers never told me that by filing the Memorandum in the real property records that [Cypress] would probably, immediately, file a declaratory judgment action [or] claim for clouding [Cypress]'s leasehold interest and for interference.  Had Rogers done so, I would not have agreed to sign and have the Memorandum filed in the real property records of Travis County.

Finally, Nalle included an affidavit by John Coleman, a certified real estate appraiser, stating that the value of the fee simple interest in the subject property was $13,500,000

19

and the value of the leased fee interest in the property was $4,350,000 as of March 12, 2007. According to Coleman, the difference between those two numbers—$9,150,000—represents the amount that Nalle lost as a result of having to settle its claims with Cypress.

Porter contended that the foregoing affidavit testimony was insufficient to create a fact issue on Rogers's negligence because attorneys are not negligent where their decisions are based on unsettled law. *See Cosgrove v. Grimes*, 774 S.W.2d at 664. They further argued that the issues surrounding the filing of the Memorandum were unsettled because (1) the original lease document appeared to explicitly authorize the filing of the Memorandum, and (2) the alternative suggested by Nalle's experts—filing a declaratory judgment action and lis pendens containing Nalle's interpretation of the lease—was unavailable as a matter of law.

We agree with Porter that summary judgment was proper as to Nalle's failure-to-advise claim (i.e., its claim that Rogers breached the standard of care by failing to advise Nalle not to file the Memorandum).[13] Nalle's summary judgment evidence established that filing the Memorandum may have foreseeably led to Cypress initiating litigation against Nalle and that Rogers failed to advise Nalle against that course of

---

[13] The trial court granted Porter's first summary judgment motion, a "hybrid" traditional/no-evidence motion, with respect to Nalle's failure-to-advise claim. Ordinarily, when a trial court does not specify its grounds for granting a "hybrid" motion, we first employ the no-evidence summary judgment standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If summary judgment was not proper on no-evidence grounds, we then employ the traditional summary judgment standard of review. *See id.* Here, however, the only no-evidence ground presented in Porter's first summary judgment motion alleged that there was no evidence that Cypress suffered damages. In light of our conclusion that summary judgment on Nalle's Memorandum and failure-to-advise claims was appropriate on other, traditional grounds, we need not review the no-evidence ground. *See* TEX. R. APP. P. 47.1; *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 157 (Tex. 2004) (noting that appellate courts will affirm a summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious"); *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993) ("[W]hen there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, the appealing party must negate all grounds on appeal.").

20

action. However, it did not establish that Roger's failure to so advise Nalle was negligent. Porter's summary judgment evidence included a copy of the underlying lease agreement between Nalle and Cypress, paragraph 11 of which stated: "RECORDING. This Lease or any notice of lease may be recorded by either Lessor or Lessee." Attorney Christopher Bell, who is board-certified in commercial real estate law, stated the following in an affidavit attached to Porter's second summary judgment motion:

> This is a highly unusual lease provision. While it is customary for the parties to agree to jointly execute and record a memorandum of a lease (typically reciting the existence of the lease and its key non-economic terms), it is uncommon in the extreme to allow either party to unilaterally record any lease notice at any time. And yet, this right was explicitly given to [Nalle] under the express terms of the subject lease. . . . A reasonable prudent lawyer would have recognized this unusual right contained in the lease, at Paragraph 11, and had a duty to use it to the benefit of his client. Rogers complied fully with that duty to [Nalle].

Nalle's experts did not address Paragraph 11 of the underlying lease agreement. Bell's testimony therefore established that, at the very least, the law was unsettled regarding the propriety of filing the Memorandum in the Travis County public records.[14] Accordingly, Rogers's failure to advise Nalle not to file the Memorandum was a decision that a reasonably prudent attorney could have made. *See Cosgrove*, 774 S.W.2d at 665. It may not form the basis of a legal negligence claim.

---

[14] Bell also averred that the filing of the Memorandum was legally justified because the only alternative suggested by Nalle's experts—i.e., filing a declaratory judgment action and lis pendens containing Nalle's lease interpretation—was unavailable to Nalle. *See* TEX. PROP. CODE ANN. § 12.007 (West Supp. 2011) ("[D]uring the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property, a party to the action who is seeking affirmative relief may file for record with the county clerk of each county where a part of the property is located a notice that the action is pending."). Bell contended that the lease interpretation dispute was not an "action involving . . . the establishment of an interest in real property." *See id.*; *Helmsley-Spear of Tex., Inc. v. Blanton*, 699 S.W.2d 643, 644–45 (Tex. App.—Houston [14th Dist.] 1985, orig. proceeding) (declaring void lis pendens filed in landlord/tenant dispute because section 12.007 was not applicable). We need not address this contention because of our conclusion herein that Rogers's actions and omissions were justified by paragraph 11 of the underlying lease. *See* TEX. R. APP. P. 47.1

21

The same reasoning applies to Nalle's Memorandum claim (i.e., its claim that Rogers breached the applicable standard of care by filing the Memorandum). Because paragraph 11 of the underlying lease agreement explicitly and conspicuously permitted the filing of "any notice of lease" by any party to the lease, the decision made by Rogers to file the Memorandum was one that a reasonably prudent attorney could have made. *See id.*

Because the summary judgment evidence established that Rogers's actions and inactions were at least based on unsettled law, the trial court did not err in concluding that Porter was entitled to judgment as a matter of law on the failure-to-advise and Memorandum claims.

### 4. Photography Claim

We next address the trial court's summary judgment dismissing Nalle's photography claim (i.e., that Rogers was negligent in entering the subject property to photograph alleged lease infractions by Cypress and in advising Nalle's president to do so, and that this action gave rise to Cypress's claims against Nalle). Porter's first summary judgment motion alleged that it was entitled to judgment as a matter of law on this claim because Rogers's actions (1) did not give rise to any claim by Cypress for breach of the covenant of quiet enjoyment, and (2) did not breach any duty owed by Rogers. In its second summary judgment motion, Porter contended that Rogers's actions did not cause any contractual provision between Nalle and Cypress to be breached.

We agree that summary judgment was warranted on this claim. Nalle's summary judgment evidence included Lione's affidavit, which stated in part:

[Rogers], in my opinion, fell below the standard of care of a reasonable and prudent attorney by advising [Nalle] to go on the premises and to take so many (3,000) photographs. . . . [Rogers's] advice for [Nalle] to take so many photographs created, in my opinion, Cypress's interference and breach of quiet enjoyment claims. Giving the advice to [Nalle] to go on the property unannounced, foreseeably, in my opinion, created the claims pled by Cypress against [Nalle]. The standard of care for a reasonably prudent attorney would also require that attorney not to give negligent advice, which this was.

A breach of the covenant of quiet enjoyment requires an eviction, actual or constructive, brought about by the acts of the landlord, those acting for the landlord, or those acting with the landlord's permission. *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 359 n.7 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Lazell v. Stone*, 123 S.W.3d 6, 12 n.1 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("The elements of a breach of the warranty of quiet enjoyment are the same as the elements in a constructive eviction claim.")). The essential elements of constructive eviction are: (1) an intention on the part of the landlord that the tenant shall no longer enjoy the premises; (2) a material act by the landlord that substantially interferes with the tenant's intended use and enjoyment of the premises; (3) the act permanently deprives the tenant of the use and enjoyment of the premises; and (4) the tenant abandons the premises within a reasonable time after the commission of the act. *Id.* (citing *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 539 (Tex. App.—Houston [1st Dist.] 1993, no writ)).

Nalle's summary judgment evidence established that Rogers advised Nalle's president to enter upon the premises to photograph alleged lease infractions, and that Rogers repeatedly did so himself. However, Nalle's evidence did not show that Cypress had been actually evicted from the property, nor did it establish any of the

aforementioned elements of a constructive eviction. Accordingly, no claim for breach of quiet enjoyment could have arisen from Rogers's actions. Summary judgment was proper on this claim.

As to Nalle's claim that Rogers's actions led to a claim by Cypress for breach of contract, that too was unavailable as a matter of law. Porter's second summary judgment motion included a copy of the lease agreement between Nalle and Cypress, paragraph 19 of which stated:

> LESSOR'S RIGHT OF ENTRY. Lessor [Nalle] shall have the right, at all reasonable hours, to enter the Premises for the following: inspection; cleaning or making repairs; alterations or additions as Lessor may deem necessary or desirable; determining Lessee's use of the Premises; determining if an act of default under this Lease has occurred; or showing the Premises to others at any time within 180 days of the termination of the then current term of this Lease.

This clause explicitly authorizes the action that Nalle says led to Cypress's breach of contract claim—i.e., entering upon the premises to inspect and to "determin[e] if an act of default under this Lease has occurred." Because of this provision, Rogers's decision to enter upon the property in order to photograph alleged lease infractions by Cypress, and to advise Nalle's president to do the same, were decisions that a reasonably prudent attorney could have made. *See Cosgrove*, 774 S.W.2d at 665. The trial court did not err in granting summary judgment dismissing this claim.

**5.    Fraud Claim**

The trial court granted Porter's second summary judgment motion with respect to Nalle's allegation that Porter and Rogers committed fraud. Nalle's live petition alleged in part that Rogers

> fraudulently misrepresented his legal experience and credentials to Nalle for the purpose of securing Nalle's business as a client. . . . Rogers made

24

material misrepresentations in overstating his experience and expertise in commercial real estate lending disputes. Those representations were material because they formed the basis of Nalle's decision to hire Rogers. . . . Rogers's representations were false. Rogers is not board certified in commercial real estate law, which may suggest a certain level of experience, and even after the opportunity to prove his credentials in pre-trial discovery, he has failed or refused to produce any evidence giving credit to his proclaimed experience.

In its second summary judgment motion, Porter argued that it was entitled to judgment as a matter of law because: (1) the fraud claim constituted an improper effort by Nalle to "fracture" its legal malpractice claims[15]; (2) there was "no evidence of any false misrepresentations by Rogers as to his legal credentials or experience"; and (3) there was no evidence of damages independent of legal negligence damages.[16]

In an affidavit filed with Nalle's response to Porter's second summary judgment motion, Nalle's president stated in relevant part as follows:

4. In the underlying case, when I received correspondence from [Cypress] concerning [Nalle]'s interpretation of the lease provision regarding buildout and remodeling, I sought legal advice. Because of our respective interpretations of the lease, I was concerned our dispute might go to litigation. I was referred to Pat Rogers by

---

[15] The rule against "fracturing" a legal negligence claim "prevents legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims." *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see Beck v. Law Offices of Edwin J. Terry, Jr., P.C.*, 284 S.W.3d 416, 427 (Tex. App.—Austin 2009, no pet.). The rule provides that, "[i]f the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim." *Deutsch*, 97 S.W.3d at 189. "If, however, the client's complaint is more appropriately classified as another claim, for example, fraud, . . . breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence." *Id.* Nalle has not cited any Texas Supreme Court case law, nor any case law from this Court, applying this rule, and we find none. Nevertheless, we need not decide whether this rule applies generally, or whether it barred Nalle's fraud claim in particular, because of our conclusion herein that summary judgment on the fraud claim was warranted on no-evidence grounds. *See Joe*, 145 S.W.3d at 157.

[16] In the discussion of this issue in its appellate brief, Nalle states: "[Porter] did not assert, based on either traditional or no-evidence grounds, that Nalle could present no evidence that Rogers had misrepresented his legal experience and credentials as pleaded by Nalle." That is incorrect. Porter's second summary judgment motion explicitly asserted that Nalle had "no evidence of any false misrepresentations by Rogers as to his legal credentials or experience . . . ."

> Elizabeth Rogers, my former fiancé[e], Pat Rogers's ex-wife, and partner in the law firm Vinson & Elkins.
>
> 5.    I met with Pat Rogers and interviewed him regarding his experience in handling commercial lease matters. Rogers told me he was very experienced in handling such matters and had represented both sides of all issues regarding commercial leasing matters. Rogers agreed to charge Nalle $190 per hour, which was, according to him, the "family rate." We did not have a written fee contract.

Nalle has directed us to no other summary judgment evidence supporting its fraud claim.[17]

This evidence was insufficient to raise a genuine issue of material fact as to the fraud claim. *See* TEX. R. CIV. P. 166a(i). Although Nalle's president testified that Rogers made certain representations to him regarding his qualifications, there was no evidence adduced that those representations were false. *See, e.g., Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (noting that one necessary element of a fraud claim is that "the representation was false"). Summary judgment was therefore proper on this claim.

### 6.    Forcible Detainer Claim

Finally, we address Nalle's claim that Rogers committed legal malpractice by failing to file a forcible detainer action seeking to evict Cypress from the subject property. In its live pleading, Nalle claimed that this failure proximately caused Nalle to settle its litigation with Cypress and waive its claim that the lease had been terminated by Cypress's infractions.

---

[17] On appeal, Nalle confines its arguments regarding its fraud claim to the issue of whether or not the claim constituted impermissible "fracturing" of its legal malpractice claim. But we must affirm a summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Id.*

Porter's first summary judgment motion, which the trial court granted as to the forcible detainer claim, stated in relevant part as follows:

> **9. [Nalle] Cannot Show that it Would Have Been Successful on its Lease Termination Claims.** [Nalle] cannot show causality, as it cannot show that it would have been successful on its underlying Lease Termination case. There is no evidence that any claimed breaches and defaults under the Master Lease were in fact defaults, and even if there was such evidence, there is no evidence that any reasonable jury would have found those to have been material, that a court would have found that such a finding was supported by some evidence or factually sufficient evidence, and, even if it had, that it would have construed the Master Lease so as to warrant termination or forfeiture in [Nalle's] benefit.

We construe this argument as asserting summary judgment grounds challenging the forcible detainer claim on the basis that there was no evidence of causation.

The parties appear to agree that, in order to show causation, Nalle would be required to show that it would have likely been successful in its underlying lease termination claim against Cypress; and that, in turn, would require a showing that Cypress's breaches of the underlying lease were material. *See Rangel*, 177 S.W.3d at 22 (setting forth "suit-within-a-suit" requirement for legal negligence claims arising from prior litigation); *see also Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198 (Tex. 2004) (noting that a non-breaching party's obligation to continue performance of a contract is discharged or excused only when the other party's breach is material). In *Mustang Pipeline*, the Texas Supreme Court identified the following five circumstances as significant in determining whether a failure to perform is material:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

27

(c)     the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d)     the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances;

(e)     the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Mustang Pipeline Co.,* 134 S.W.3d at 199 (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)).

In response to Porter's summary judgment motion, Nalle produced the affidavits of Barton and Lione. Barton set forth the criteria for materiality as stated in *Mustang Pipeline* and opined that: "The parking violations in question exposed [Nalle] to potential claims for personal injury and property damage sustained by third parties, as well as fines for violations of City ordinances. The parking violations would, therefore, be material under the criteria specified by the Texas Supreme Court in *Mustang Pipeline.*" Barton further concluded that "[i]f the case had proceeded to trial, probably [Nalle] would have prevailed on all of these issues, leaving [Cypress] without a viable defense against [Nalle's] claim that the Lease had been terminated by reason of [Cypress]'s default." Lione testified that "the illegal parking operation which was ongoing . . . would have probably been found by the JP Court to be a terminable event." Lione further stated that "if this case had been appealed to County Court at Law, then the Court would have affirmed the JP Court's ruling of termination based upon a strong case of termination as fully described in the expert report/affidavit of [Barton]."

Nalle relies on Barton's and Lione's affidavits in arguing that it raised a fact issue on the issue of the materiality of Cypress's breaches. However, as noted, the trial court

28

granted Porter's motion to exclude much of the affidavit testimony on the basis that the opinions expressed therein were conclusory and unreliable. *See, e.g.*, *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) ("An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts."); *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 727 (Tex. 1998) (noting that an expert opinion is unreliable if "there is simply too great an analytical gap between the data and the opinion proffered"). The excluded portions include all of the testimony quoted above. The remaining portions of Barton's and Lione's affidavits which were accepted as summary judgment evidence "do no more than create a mere surmise or suspicion" that Nalle would have prevailed on its lease termination claim. *See Ortega*, 97 S.W.3d at 772.

Nalle contends by a sub-issue and a footnote in its appellate brief that the trial court abused its discretion by excluding the specified portions of the affidavits. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). Having reviewed the record, we disagree that the trial court abused its discretion. In the excluded portions of his affidavit, Barton testified as to the likely outcome of a forcible detainer action filed by Nalle seeking to evict Cypress. However, although Barton correctly sets forth the criteria for determining whether a failure to perform under a contract is material, he does not apply that law to the facts of the case. Barton merely states: "It is difficult to determine a circumstance under which a court would not view a violation of a lease provision requiring the tenant to comply with all applicable laws as material, even if the specific conduct giving rise to the violation is not mentioned expressly in the lease." He

29

does not, however, analyze the particular facts of Nalle's lease termination claim in light of the *Mustang Pipeline* criteria. Without such an analysis, Barton's opinion that a forcible detainer action would have been successful bridged "too great an analytical gap." *See Gammill*, 972 S.W.2d at 727. It was properly excluded.

The excluded portions of Lione's affidavit, which referred to Barton's testimony regarding the applicable law, similarly failed to explain how application of the relevant law would result in Nalle being successful in a forcible detainer action. Lione failed to "explain the basis of his statements to link his conclusions to the facts." *Earle*, 998 S.W.2d at 890. The testimony was therefore conclusory and properly excluded. *See id.*; *Gammill*, 972 S.W.2d at 727.

Considering only competent, admissible evidence, we find that Nalle failed to raise a genuine issue of material fact as to causation with respect to the forcible detainer claim. *See* TEX. R. CIV. P. 166a(i); *Rangel*, 177 S.W.3d at 22. Summary judgment on that claim was proper.[18]

Because summary judgment in favor of Porter was proper on all of Nalle's counterclaims, we overrule Nalle's second issue.

---

[18] On appeal, Porter additionally argues that summary judgment on the forcible detainer claim was proper because Cypress was not in "physical or actual possession" of the premises. *See* TEX. R. CIV. P. 746 ("In case of forcible entry or of forcible detainer under Sections 24.001–24.008, Texas Property Code, the only issue shall be as to the right to actual possession; and the merits of the title shall not be adjudicated."). Porter further argued before the trial court that summary judgment was proper because of certain deposition testimony by Nalle's president; specifically, when asked whether he had any "grievance" regarding Rogers's failure to file a forcible detainer action, Nalle's president replied: "I don't—at this time I don't, but that may come up later." Porter contended in its summary judgment motion that this testimony constituted a waiver of Nalle's forcible detainer claim. We need not address either of these grounds for summary judgment because we have already concluded that summary judgment was proper based on no-evidence grounds. *See* TEX. R. APP. P. 47.1.; *Joe*, 145 S.W.3d at 157 (Tex. 2004).

30

## C. Judgment on Porter's Claims

By its third issue, Nalle contends that the trial court's judgment awarding damages and attorney's fees to Porter must be vacated in the event that we reverse the summary judgments dismissing Nalle's counterclaims. It claims that, in the event that the summary judgment is reversed, it would be entitled to defend against Porter's claim for unpaid fees by asserting that Porter should not be entitled to recover those fees due to its legal malpractice. *See Weisman v. Lackshin & Nathan*, No. 01-88-00003-CV, 1988 Tex. App. LEXIS 3205, at *8 (Tex. App—Houston [1st Dist.] Dec. 29, 1988, no writ) (mem. op., not designated for publication) (reversing a summary judgment awarding unpaid fees to a law firm because it had already reversed the trial court's summary judgment dismissing a legal malpractice counterclaim filed by the client, and noting that the client's legal malpractice claim "was the basis for the affirmative defense of offset" raised in response to the law firm's summary judgment motion)

We have overruled Nalle's issue challenging the trial court's summary judgment dismissing its counterclaims. Accordingly, Nalle's third issue is overruled as moot.

## D. Cross-Appeal

By one issue on cross-appeal, Porter argues that the trial court erred in denying its motion for judgment notwithstanding the jury's verdict with respect to attorney's fees.

The jury was asked, in charge question number six, to assess the "reasonable fee for the necessary services of [Porter]'s attorneys in this case to collect the amount you found owed by Nalle . . . ." The jury was asked to assess both the fees incurred by Porter's attorneys and the fees attributable to services provided by Porter's outside counsel, the law firm of Harris & Greenwell. The jury answered as follows:

a.	For preparation and trial in the collection of the amounts you found to be owed in response to Question No. 4 [regarding contract damages]:

1.	Harris & Greenwell:	$150,000.00

2.	[Porter]:	$0

b.	For defense of the "Claims" against [Porter] and Pat Rogers:

1.	Harris & Greenwell:	$0

2.	[Porter]:	$0

c.	For representation through appeal to the court of appeals.

1.	Harris & Greenwell:	$0

d.	For representation at the petition for review stage in the Supreme Court of Texas.

1.	Harris & Greenwell:	$0

e.	For representation at the merits briefing sta[g]e in the Supreme Court of Texas.

1.	Harris & Greenwell:	$0

f.	For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

1.	Harris & Greenwell:	$0

The final judgment, reflecting the jury's verdict, awarded Porter $150,000 "for collection of attorney's fees" and awarded zero appellate fees. Porter contends that each of the jury's "$0" answers were unsupported by the evidence.

**1.	Applicable Law and Standard of Review**

Section 38.001 of the civil practice and remedies code provides that a "person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."

32

TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008). The determination of what is a reasonable fee is a question for the trier of fact. *Mercier v. Sw. Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 775 (Tex. App.—Corpus Christi 2007, no pet.). Here, the jury was instructed on the following factors to be considered in determining reasonableness:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2004); *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Mercier*, 214 S.W.3d at 775–76. The court is not required to receive evidence on each of these factors. *Mercier*, 214 S.W.3d at 776 (citing *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897–98 (Tex. App.—Dallas 2003, no pet)). The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Id.*

We review a jury's finding as to the amount of reasonable and necessary attorney's fees for legal sufficiency of the evidence. *Carlile v. RLS Legal Solutions, Inc.*, 138 S.W.3d 403, 409 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We will affirm the finding unless the record shows: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. We view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *Id.* at 807. The ultimate test is whether the evidence would enable reasonable and fair-minded people to make the finding under review. *Id.* at 827. "We must be mindful, however, that we are reviewing a jury's verdict and may not substitute our judgment for that of the factfinder." *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

## 2. Analysis

Rogers testified that a reasonable and necessary fee for his services undertaken with respect to the fee collection case against Nalle was $42,400; he further testified that a reasonable and necessary fee for Porter's services undertaken in defending against Nalle's counterclaims was $148,400. Andrew Greenwell of Harris & Greenwell testified that a reasonable and necessary fee for his firm's trial services was $301,600. As noted, the jury awarded only $150,000 in fees.

34

On appeal, Nalle argues that the jury's refusal to award fees attributable to Porter's in-house work was supported by the record because Porter presented no evidence explaining why it was reasonable and necessary for Porter to be represented by both outside and in-house counsel. We agree. The jury could have reasonably determined that the work done by Rogers and other Porter attorneys was duplicative of the work done by outside counsel, especially considering the fact that no itemized billing statements were offered into evidence.[19] It is also noteworthy that the total amount involved in the litigation was only $132,661 in allegedly unpaid fees arising from the Cypress litigation; the jury could have considered this fact in rejecting Porter's request for fees of more than three times that amount incurred in its collection case against Nalle. *See Arthur Andersen*, 945 S.W.2d at 818; *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)[20]; *Mercier*, 214 S.W.3d at 776.

---

[19] In closing arguments, Nalle's counsel emphasized the fact that, while detailed records regarding Porter's billing in the Cypress litigation were offered into evidence at trial, neither Porter nor Greenwell offered detailed billing records regarding their work in the fee collection or legal malpractice cases. Porter correctly notes that billing records are not required under Texas law in order to establish entitlement to attorney's fees, *see, e.g., RM Crowe Prop. Servs. Co. v. Strategic Energy, LLC*, 348 S.W.3d 444, 452 (Tex. App.—Dallas 2011, no pet.); however, the jury was entitled to consider the absence of such records here in reaching their conclusion as to the amount of reasonable and necessary fees.

[20] In *Ragsdale*, the Texas Supreme Court stated that "where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (citing *Cochran v. Wool Growers Central Storage Co.*, 140 Tex. 184, 166 S.W.2d 904, 908 (1942)). However, the Court noted that:

> we do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed. For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact.

*Id.*

35

The jury's refusal to award fees attributable to defending against Nalle's counterclaims is also supported by the record. As Porter notes, the trial court granted Nalle's motion in limine preventing Porter from discussing the trial court's summary judgment rulings on the legal malpractice counterclaims. Accordingly, the trial court allowed only limited testimony regarding fees incurred with respect to Porter's defense of those claims. Porter does not contend on appeal that the trial court's order in limine was erroneous. Our review is therefore limited to the evidence appearing in the record, and viewing that evidence in the light most favorable to the jury's verdict, *see City of Keller*, 168 S.W.3d at 807, we find that the jury's award of zero fees attributable to the defense of the legal malpractice claims was supported by legally sufficient evidence.

However, the evidence did not support an award of zero conditional appellate attorney's fees. Greenwell testified that the following amounts would be reasonable and necessary fees for appellate proceedings: $40,000 for an appeal to this Court; $10,000 for a petition for review to the Texas Supreme Court; $20,000 for supreme court briefing; and $5,000 for oral argument in the supreme court. In its cross-appellee's brief, Nalle does not direct us to any evidence casting doubt on the reasonableness or necessity of the appellate fees testified to by Greenwell; instead, it argues only that the jury's refusal to award appellate fees was justified because there was no evidence as to how the fees would be apportioned as between Porter and Harris & Greenwell. It does not cite any authority, however, and we find none, establishing that such apportionment was necessary. In the absence of any evidence challenging the reasonableness or necessity of the appellate fees testified to by Greenwell, no reasonable juror could have

36

concluded that zero conditional appellate attorney's fees should have been awarded. *See id.* at 827.

We therefore reverse the trial court's judgment insofar as it fails to award conditional appellate attorney's fees, and we remand the cause with instructions to award such fees consistent with the evidence adduced in this case. The remainder of the trial court's judgment as to attorney's fees is affirmed.

## III. Conclusion

The judgment of the trial court is affirmed in part and reversed in part as stated herein, and the cause is remanded for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
18th day of April, 2013.